# NICHOLS et al., Trustees, Appellants, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

## Division Two, June 30, 1903.

1. **Insurance:** CONTRACTS IN REFERENCE TO LAWS OF OTHER STATES. Under the amendment to the insurance laws of 1895 (Laws 1895, p. 197) the insured and a foreign insurance company are given the power to contract that the policy shall be subject to and be based upon the laws of another State, and if these laws are in conflict with the laws of Missouri, the terms of the policy will be construed according to the laws of the State which the parties agreed should govern. That amendment overruled the prior decision of the court holding that in spite of clauses in the application or policy agreeing that the contract of insurance should be construed according to the laws of another State, they must, nevertheless, be construed according to the laws of this State. This amendment applies to insurance policies admitted to be Missouri contracts.

2. ————: ————: EXTENDED INSURANCE: PAID-UP INSURANCE. Under the amendment of 1895 to the Missouri insurance laws, a policyholder who contracted that his policy might be construed under the laws of New York, is not entitled, without demand made, after the payment of the three annual premiums and a default in the payment in the fourth, to such extended or temporary insurance for the full amount of the policy as its net value will buy, but to only a paid-up policy for his proportionate interest in the reserve. So that if the Mutual Life Insurance Company of New York in 1896 issued its policy to a citizen of this State for $5,000, and he paid three annual premiums thereon, and defaulted when the fourth premium came due in 1899, when the net value of his policy was $104.04, which would have extended his policy for two years and eighteen days, and he died within a year after default, without having elected to take extended temporary insurance, his legal representatives are not entitled, under the amendment of 1895, which authorized him to contract under the laws of New York, to recover the $5,000, but only the paid-up value of the policy at the time the default was made, which was $305.

3. ————: PAID-UP: MEANING. The words "paid-up insurance," used in the statute in reference to life insurance, mean an insurance for life, fully paid up. The words "extended insurance" or "temporary insurance," when used in the statute which provides that where there has been a default in the payment of premiums the net value of the policy may be applied to purchasing extended or temporary

insurance for the full amount of the policy, do not mean paid-up "extended insurance" or paid-up "temporary insurance," but paid-up insurance means a policy for a fixed amount payable at the death of the insured whenever that may be.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Stewart, Cunningham & Eliot* for appellants.

(1) This policy is a Missouri contract. The rights and obligations of the parties to it are controlled and determined by the statutes of Missouri in force when the policy was issued, April 9, 1896, no matter what the language or stipulations of the policy itself may be. Cravens v. Ins. Co., 148 Mo. 599; Equitable Society v. Clements, 140 U. S. 232; Price v. Ins. Co., 48 Mo. App. 294. (2) The body of section 5859 does not, but the proviso does apply to and control this case. Section 5859 amended is not intended to abrogate or derogate from section 5856. Its meaning and purpose are to except from the operation of section 5856 such policies as contain agreements in substantial conformity with the provisions of section 5856—such agreements at least as will fairly accomplish the object of section 5856, which is to prevent forfeiture for non-payment of premiums after two full annual premiums have been paid. Price v. Ins. Co., 48 Mo. App. 296. The fact, then, that any given policy does not by its terms prevent a forfeiture after payment of two full annual premiums are paid, leads logically towards the conclusion that that policy is not such an one as section 5859 intends shall be excepted or excluded from the application to it of section 5856. Cravens v. Ins. Co., 148 Mo. 605; Laws 1895, p. 197; Equitable Society v. Clements, 140 U. S. 233; Price v. Ins. Co., 48 Mo. App. 281. (3) The body of section 5859 amended is *in pari materia* with sections 5856 and 5858; that is to say, non-forfeiture of policies

on which two annual premiums have been paid. It permits provision to be made in the policy, by unconditional agreements, for instances in which only two annual premiums have been paid. The proviso of section 5859, however, plainly limits that permission; limits the right and power of the parties to agree by the policy; limits the application of the body of the section itself, to instances or cases in which only two annual premiums have been paid—by declaring that "in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided for in section 5856 of this article," and thus relegates to section 5856 every case and instance in which three annual premiums have been paid. Laws 1895, p. 197; R. S. 1889, secs. 5856, 5858; Cravens v. Ins. Co., 148 Mo. 583. (4) According to the terms and provisions of this policy, and of the statute of New York, there would in this case be complete and final forfeiture, notwithstanding that not only two, but three full annual premiums had been paid before default. As the facts are, the insurer, according to the terms of the policy and the New York statute, is bound for nothing. As the facts are, the insurer is by the statute of Missouri (secs. 5856 and 5858) bound to pay $4,882.87, that sum being the face of the policy ($5,000), less one unpaid annual premium and interest. Cravens v. Ins. Co., 148 Mo. 583; Hanthorne v. Ins. Co., 5 Mo. App. 73; Ins. Co. v. Barbour (Ky. Ct. App.), 17 S. W. 796; Knapp v. Ins. Co., 117 U. S. 411; Sheerer v. Ins. Co., 20 Fed. 886; Ashbrook v. Ins. Co., 94 Mo. 72; Bank v. Ins. Co., 81 Fed. 935, 84 Fed. 122. This policy, therefore, has not by its terms accomplished the object of the Missouri statutes in this case. Price v. Ins. Co., 48 Mo. App. 296; Cravens v. Ins. Co., 148 Mo. 605. (5) This policy

does not contain agreements such as the body of section 5859 requires it shall have in order that it may escape the application to it of ''the three preceding sections'' 5856 and 5858. It does not nor does the New York statute make any provision whatever for non-forfeiture where only two annual premiums have been paid on the policy. (a) The New York statute does not ''prescribe'' nor does the policy contain any unconditional agreement for non-forfeiture, surrender value, temporary insurance or paid-up insurance. The policy does not contain agreements for such non-forfeiture or paid-up temporary or lifetime insurance as the New York statute conditionally provides for. The policy does not give the insured such rights as the New York statute conditionally provides. (b) This policy does not contain any provision for an unconditional cash surrender value. (c) Nor for the unconditional commutation of the policy. (d) Nor did the holder within sixty days after default, or ever, surrender the policy, or accept another. (e) Nor was the policy ever surrendered. Therefore, there is nothing in the policy or the facts in this case to bring it under the control or application of the body of section 5859. Cravens v. Ins. Co., 148 Mo. 607; Hanthorne v. Ins. Co., 5 Mo. App. 73; Northwestern Ins. Co. v Barbour, 17 S. W. 796; Knapp v. Ins. Co., 117 U. S. 411; Sheerer v. Ins. Co., 20 Fed. 886; Ashbrook v. Ins. Co., 94 Mo. 72; Bank v. Ins. Co., 81 Fed. 935, 84 Fed. 122; Price v. Ins. Co., 48 Mo. App. 283. (6) Three full annual premiums having been paid on this policy, this case falls not under the body but under the proviso of section 5859 amended, and is by that proviso relegated to section 5856, under which section as well as by this proviso plaintiffs are ''entitled to paid-up insurance, the net value of which shall be equal to that provided in section 5856.'' (7) The ''paid-up insurance'' to which the proviso of section 5859 and also section 5856 entitle the plaintiffs is the paid-up, extended ''temporary insurance for the full

amount written in the policy" for such term as the net
value of the policy, taken as a net single premium, will
keep the policy in force, as is prescribed in section
5856.   These words "paid-up insurance" in that pro-
viso do not mean a "new paid-up policy . . . for
such an amount as the net value of the original policy
. . . will purchase applied as a single premium," as
is provided for at the option of the insured by section
5857.   The former is as aptly designated as the latter
by words "paid-up insurance."   The policy designates
both as "paid-up" insurance.   The former is, the latter
is not, "provided for in section 5856 of this article."
R. S. 1879, sec. 5986; R. S. 1889, secs. 5856 and 5858;
Laws 1895, p. 197; Knapp v. Ins. Co., 117 U. S. 414;
Price v. Ins. Co., 48 Mo. App. 283.   (8)   The circuit
court erred in holding that sections 5856 and 5858 do
not, and that the proviso of section 5859 does not, but
that the New York statute or the terms of the policy
do control this case, and that the body of section 5859,
Revised Statutes 1889, amended, does apply to this
case; and the circuit court erred in not giving plaintiffs
judgment for $4,882.87, with interest and costs.   R. S.
1889, secs. 5856 and 5858; Laws 1895, p. 197; R. S.
1889, sec. 5857; Cravens v. Ins. Co., 148 Mo. 605; Ins.
Co. v. Cravens, 178 U. S. 389.

*Seddon & Blair* and *Nathaniel S. Brown* for re-
spondent; *James L. Blair* and *Edward Lyman Short* of
counsel.

(1)   The policy in suit was delivered April 9, 1896,
while the amendment by the Act of 1895 was in force.
It follows, therefore, that the Act of 1895 governed the
insurance contract.   Epperson v. Ins. Co., 90 Mo. App.
432; Christian v. Ins. Co., 143 Mo. 460.   (2)   The Act
of 1895 is a legislative declaration that the parties to
a contract of life insurance may, by agreement, sub-
stitute the non-forfeiture law of a foreign State in lieu

of sections 5856, 5857 and 5858, Revised Statutes 1889, but with the proviso or condition that after at least three premiums have been paid, the policy-holder shall be entitled in any event to a paid-up policy for some amount. (3) The body of the Act of 1895 applies in all cases where the policy is issued by a company organized under the laws of a foreign State, and authorized to do business in Missouri, provided the laws of such foreign State "prescribe a surrender value or paid-up or temporary insurance in case of default in the payment of premiums," and the policy "shall contain an agreement for such surrender value, paid-up or temporary insurance as prescribed by such other State." The proviso of said act applies to all policies of life insurance, whether issued by a foreign or domestic company. It follows, therefore, that, since three annual premiums were paid on this policy before default, both the body of the Act of 1895 and the proviso thereto apply to and control this case. The benefit to the policy-holder may be greater, but can not be less than that provided for by the proviso. (4) The proviso to the Act of 1895 materially modifies the body of the act in that after at least three premiums have been paid the policy-holder must have paid-up insurance of at least a certain amount, even if the Missouri non-forfeiture law does not apply in its entirety. Epperson v. Ins. Co., 90 Mo. App. 436. (5) The policy in suit contains an agreement for paid-up insurance as prescribed by the State of New York in that it ousts the operation of the Missouri law, except as to the proviso. (6) The words "paid-up insurance" as used in the proviso to the Act of 1895, do not mean "term insurance," or "extended insurance," or "temporary insurance;" they mean a paid-up policy for life. Hamilton v. Ins. Co., 109 Ga. 381; Knapp v. Ins. Co., 117 U. S. 411.

FOX, J.—This is a suit upon a policy of life insurance issued and delivered April 9, 1896, in Mi-

souri, to a citizen of Missouri by the defendant, respondent, a corporation of the State of New York, then doing a life insurance business in Missouri. A jury was waived, and the case was tried by the court upon the petition, the amended answer, the application for insurance, the policy of insurance, and a stipulation of facts.

The petition sets forth the issue and delivery of the policy in Missouri on the 9th of April, 1896, to one Samuel Harris, subject to the laws of Missouri, the payment by said Harris of three annual premiums, sufficient under the Statutes of Missouri to keep the policy in force long after the death of said Harris, the assignment and transfer of the policy by Harris, the assured, to the plaintiffs, who were and are his creditors; the death of said Harris on the 28th of November, 1899; the making and delivery to defendants of proofs of death and demand of payment of $5,000, and the failure and refusal of defendant to pay the same. The petition prays judgment for five thousand dollars, the full amount of the policy, with interest and special damages. The answer sets up a default by Harris in the payment of the fourth annual premium on this policy, and contends that by reason of such default the policy became void and of no effect, and that the plaintiffs, as his assignees, had and have no right to recover on the policy, but that defendant is liable to the plaintiffs only for the amount of a new paid-up policy of insurance in the sum of $305, which sum defendant says it is ready and willing to pay.

This cause was submitted to the court upon the following agreed statement of facts.

"For the purpose of the trial of this cause and at said trial the plaintiffs and defendant stipulate and agree upon the following facts, viz.:

"1. Prior to the year 1898 and until January 27, 1899, the Commercial Bank of St. Louis was a banking corporation of the State of Missouri, transacting busi-

ness at the city of St. Louis. Said corporation was dissolved January 27, 1899, and plaintiffs then were the presidents and directors and managers of the affairs of said corporation, and then became and now are the trustees of the Commercial Bank of St. Louis and entitled to sue as such upon causes of action accrued or accruing to said bank.

"2d. Prior to April 9, 1896, defendant, the Mutual Life Insurance Company of New York, was, and still is, a corporation of the State of New York, authorized and licensed under the provisions of the laws of Missouri to carry on the business of life insurance in Missouri, and then was and ever since then has been and still is carrying on said business in Missouri, under the license and authority of the State of Missouri, subject to and in conformity with all the requirements and provisions of statutes of Missouri in that behalf provided.

"3d. In the prosecution of its said business under its said license, defendant, on or about April 9, 1896, delivered at St. Louis, Missouri, to Samuel Harris, a citizen and resident of Missouri, its certain policy of insurance, numbered 764369, hereto attached, with the application therefor also attached and made part hereof, and then and there accepted and received from said Harris $110.50, one full annual premium on said policy. Subsequently, on or before April 9, 1897, defendant at St. Louis accepted and received from said Harris $110.50, the second full annual premium on said policy, which payment operated to keep said policy in force till April 9, 1898. Subsequently, on or before April 9, 1898, defendant at St. Louis accepted and received from said Harris $110.50, the third full annual premium on said policy, which payment operated to keep said policy in force till the 9th day of April, 1899, at noon.

"4. Said Harris failed to pay the premium falling due April 9, 1899, and never paid, nor did anyone for him ever pay, any premium on said policy other than

the first three annual premiums above mentioned. Said Samuel Harris died on the 28th day of November, 1899, at St. Louis.

"5. On April 9, 1899, when the fourth annual premium fell due and was not paid, the net value of said policy, computed upon the American experience table of mortality, with four and one-half per cent interest per annum was one hundred and thirty-eight dollars and seventy-five cents, three-fourths of which sum was one hundred and four dollars and four cents. There were no notes or other indebtedness to the defendant given or existing on account of past premiums on said policy. One hundred and four dollars and four cents, taken as a net single premium for temporary insurance for $5,000 written in said policy would keep said policy in force for the term of two years and eighteen days after April 9, 1899.

"6. During the life of said Samuel Harris and of said policy, said Harris, for value received, while said Commercial Bank was his creditor to the amount of about $6,000, assigned, transferred and set over said policy to the Commercial Bank of St. Louis, as collateral security to secure the indebtedness of said Harris to said bank. Plaintiffs are still the holders of said policy and are creditors of said Samuel Harris in manner aforesaid to the amount of about $6,000, as aforesaid.

"7. Plaintiffs within due time after the death of said Samuel Harris gave defendant notice thereof, and on or about December 15, 1899, submitted and delivered to defendant proofs as required by said policy. Defendant thereupon offered and was ready to issue to plaintiff a paid-up policy for $305, being the amount of paid-up insurance purchasable by the life reserve of said policy according to the provisions of section 88, chapter 690, Laws of the State of New York of 1892, but has refused and still refuses to pay or do more.

"8. Section 88, chapter 690, Laws of the State of

New York of 1892, in force at the date of said policy, as a law of New York, is in the following words and figures, to-wit:

" '88. *Surrender value of lapsed or forfeited policies.* Whenever any policy of life insurance issued after January first, eighteen hundred and eighty, by any domestic life insurance corporation after being in force three full years, shall, by its terms, lapse or become forfeited for the non-payment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, the reserve on such policy computed according to the American experience table of mortality at the rate of four and one-half per cent per annum shall, on demand made, with surrender of the policy within six months after such lapse or forfeiture, be taken as a single premium of life insurance at the published rates of the corporation at the time the policy was issued, and shall be applied, as shall have been agreed in the application or policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse or forfeiture, or to purchase upon the same life at the same age paid-up insurance payable at the same time and under the same conditions, except as to payments of premiums, as the original policy. If no such agreement be expressed in the application or policy, such single premium may be applied in either of the modes above specified at the option of the owner of the policy, notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy.

" 'The reserve hereinbefore specified shall include dividend additions calculated at the date of the failure to make any of the payments above described according to the American experience table of mortality with interest at the rate of four and one-half per cent per

annum after deducting any indebtedness of the insured on account of any annual or semi-annual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing.

" 'The net value of the insurance given for such single premium under this section, computed by the standard of this State, shall in no case be less than two-thirds of the entire reserve computed according to the rule prescribed in this section after deducting the indebtedness as specified; but such insurance shall not participate in the profits of the corporation.

" 'If the reserve upon any endowment policy applied according to the provisions of this section as a single premium of temporary insurance be more than sufficient to continue the insurance to the end of the endowment term named in the policy, and if the insured survive that term, the excess shall be paid in cash at the end of such term, on the conditions on which the original policy was issued.

" 'This section shall not apply to any case where the provisions of the section are specifically waived in the application and notice of such waiver is written or printed in red ink on the margin of the face of the policy when issued.' "

The court, sitting as a jury, upon the agreed statement of facts, as herein quoted, rendered judgment for the plaintiffs in the sum as admitted to be due by the answer, three hundred and five dollars.

After an unsuccessful motion for new trial, on the part of the plaintiffs, this cause is brought here by appeal.

The learned trial judge in disposing of this case filed a written opinion, expressing his views upon the law as applicable to the facts agreed upon. That we may fully comprehend and appreciate the position taken by the trial court, we here quote the opinion:

"This is an action upon a policy of insurance in which plaintiffs claim that they are entitled to recover the sum of $5,000, and defendant admits a liability of $305. The question is to be determined by a construction of the statute of this State with reference to temporary insurance. I know of no decision that has ever been rendered in this State or elsewhere upon the particular points of law involved in this case, and the industry of counsel has failed to produce any case exactly like the one which I am now considering.

"Section 5856 of the Revised Statutes of 1889, provides that no policies of life insurance issued by any life insurance company authorized to do business in this State, on and after the first day of August, 1879, shall, after payment of two full annual premiums, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: 'The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American experience table of mortality, with four and one-half per cent interest per annum, and after deducting from three-fourths of such net value any notes or other indebtedness to the company, given on account of past premium payments on said policy issued to the insured, which indebtedness shall then be cancelled, the balance shall be taken as a net single premium for temporary insurance, for the full amount written in the policy, and the term for which such temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid.'

"It is conceded by both parties to the case that were it not for the amendment passed in the year 1895 of section 5859 of the Revised Statutes of 1889, the plaintiffs would be entitled to recover the full amount of $5,000 in this case. This is an action against the Mutual Life Insurance Company of New York, a com-

pany organized under the laws of another State, doing business in this State. It is, therefore, one of the insurance companies referred to in section 5856. Three premiums were paid. It will be noticed that this amendment provides that in case of default, in (i. e., after) the payment of two premiums, the policy shall not be forfeited, but if the value of the policy at the time of the default, computed as stated in section 5856, is sufficient to procure temporary insurance for the time stated therein, if that runs past the date of the death of the deceased, then, as a matter of course, the assured would be entitled to recover the full amount of the policy, $5,000.

"It is conceded that if said computation is made in this case it would procure temporary insurance suf ficient to carry the policy for the full amount beyond the date of the death of the deceased. But the defendant invokes the amendment of section 5859, which was passed in the year 1895, to be found in Laws of 1895, page 197. The amendment of that section is as follows:

" 'Section 5859. *The foregoing provisions not applicable, when*:—The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall have been issued by any company authorized to do business in this State and organized under the laws of another State of the United States which prescribes a surrender value or paid up or temporary insurance in case of default in payment of premiums, and shall contain an agreement for such surrender value, temporary or paid-up insurance, as prescribed by such other State as a part of said policy. . . . Provided, that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances, where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up insurance, the net value of

which shall be equal to that provided for in section 5856 of this article.'

"It is admitted by the agreed statement of facts that $305 is the amount of paid-up insurance which plaintiffs would be entitled to under this clause prior to the passage of this act.   Previous to this amendment, the Supreme Court of this State, and the Supreme Court of the United States, in 140 U. S., held that notwithstanding policy-holders may contract with reference to the laws of the State where the policy is issued—notwithstanding they may agree that the laws of such State may be taken and deemed to be portions of the policy—notwithstanding they may waive any provision —for instance, such a provision for temporary insurance, under section 5856, yet such agreement as that is null and void, and the policy is construed according to the laws of the State of Missouri, which forbids and prevents forfeiture.

"It seems to me that this section (5859) is a legislative recognition of the right of parties to contract with reference to the insurance laws of other States and in that respect it may be regarded as repealing legislatively, we might say, the decisions which I have mentioned.   That is, it recognizes and gives parties the right to contract with reference to laws of another State. Therefore, the question to be determined in this case is whether or not the policy in question falls within the purview of section 5859, which provides that section 5856, which gives temporary insurance, shall not be applicable if the policy shall have been issued by any company organized to do business in this State, that is organized under the laws of another State, which prescribes a surrender value or paid up or temporary insurance in case of default in the payment of premiums (the laws of New York provide for paid-up insurance and for temporary insurance), then the section goes on further and says, 'and shall contain an agreement for surrender value, temporary or paid-up insurance, as

prescribed by such other State as a part of said policy.'

"The policy in question contains a provision for paid-up insurance in accordance with the laws of New York. It seems to me, therefore, that the policy falls within section 5859, as amended. This section provides in the latter part, 'provided, that in no instance shall a policy be forfeited for non-payment of premium after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, tl. holder of such policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided for in section 5856 of this article.'

"Under the laws of New York, they could not have obtained temporary insurance in this case, for the reason that the law provides for demand for such temporary insurance being made within a certain time, which it appears was not done.

"This policy was assigned to William Nichols and others, trustees of the Commercial Bank. If such demand were not made, under the laws of New York, they would not have been able to recover anything whatever in this case were it not for the saving clause in the amendment of section 5859, which provides that in all cases where three premiums have been paid, the then holder of the policy shall be entitled to paid-up insurance. Under that provision or proviso of this amendment, the defendant in this case has tendered the amount of $305—it has tendered a paid-up policy for that amount.

"Judgment, therefore, will be rendered in favor of the plaintiffs for $305."

We are of the opinion that the trial court, very appropriately and sharply presents the question for determination in this controversy, where it says:

"Therefore, the question to be determined in this case is whether or not the policy in question falls within

the purview of section 5859, which provides that section 5856, which gives temporary insurance, shall not be applicable if the policy shall have been issued by any company organized to do business in this State, that is, organized under the laws of another State, which prescribes a surrender value or paid-up or temporary insurance in case of default in the payment of premiums."

In 1895, the Legislature amended section 5859, Revised Statutes 1889, by striking out all of that section and inserting in lieu thereof the following section:

"Section 5859. *The foregoing provisions not applicable, when.*—The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall have been issued by any company authorized to do business in this State, and organized under the laws of another State of the United States which prescribes a surrender value or paid-up or temporary insurance in case of default in payment of premiums, and shall contain an agreement for such surrender value, temporary or paid-up insurance, as prescribed by such other State as a part of said policy, or if the policy shall contain a provision for an unconditional cash surrender value at least equal to the net single premium for the temporary insurance provided hereinbefore, or for the unconditional commutation of the policy for non-forfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this act shall not be applicable: Provided, that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such

policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided for in section 5856 of this article.''

The preceding sections, upon which section 5859 was to operate, were sections 5856, 5857, and 5858, Revised Statutes 1889, which were as follows:

''Sec. 5856.   No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this State, on and after the first day of August, A. D. 1879, shall, after payment upon it of two full annual premiums, be forfeited or become void by reason of the non-payment of premium thereon, but it shall be subject to the following rules of commutation, to-wit:   The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American experience table of mortality, with four and one-half per cent interest per annum, and after deducting from three-fourths of such net value any notes or other indebtedness to the company, given on account of past premium payments on said policy issued to the insured, which indebtedness shall then be cancelled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy, and the term for which such temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid; but if the policy shall be an endowment, payable at a certain time, or at death if it should occur previously, then if what remains as aforesaid shall exceed the net single premium of temporary insurance for the remainder of the endowment term for the full amount of the policy, such excess shall be considered as a net single premium for a pure endowment of so much as such premium will purchase, determined by the age of the insured at date of defaulting the payment of premium on the original policy, and the table of mortality and interest as aforesaid,

which amount shall be paid at end of the original term of endowment, if the insured shall then be alive.

"Sec. 5857. At any time after the payment of two or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of the policy may demand of the company, and the company shall issue, its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as the net value of the original policy at the age and date of lapse, computed according to the actuaries' or combined experience table of mortality, with interest at the rate of four per cent per annum, without deduction of indebtness on account of said policy, will purchase, applied as a single premium upon the table rates of the company; and in case of a limited payment life policy, or of a continued payment endowment policy, payable at a certain time, or at death, it shall be for an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums actually paid shall bear to the number of such annual premiums stipulated to be paid: Provided, that from such amount the company shall have the right to deduct the net reversionary value of all indebtedness to the company on account of such policy; and provided, further, that the policy-holder shall, at the time of making demand for such paid-up policy, surrender the original policy, legally discharged, at the parent office of the company.

"Sec. 5858. If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined in section 5856, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding: Provided, however, that notice of the claim and proof of the death shall be sub-

mitted to the company in the same manner as provided by the terms of the policy within ninety days after the decease of the insured; and provided also, that the company shall have the right to deduct from the amount insured in the policy the amount compounded at six per cent interest per annum of all the premiums that had been forborne at the time of the decease, including the whole of the year's premium in which the death occurs, but such premiums shall in no case exceed the ordinary life premium for the age at issue, with interest as last aforesaid.''

The questions presented in this controversy are sharply in dispute:

First. It is contended by appellant that this policy falls within the provisions of section 5856, supra.

Second. If it does not fall directly within the provisions of that section, three full annual premiums having been paid, the proviso in section 5859, Laws of 1895, as herein quoted, is applicable and that *paid-up* insurance as mentioned in the proviso contemplates temporary insurance as provided for in section 5856, supra.

On the part of the respondent, it is contended that this policy falls within the provision of the body of section 5859, supra, and hence section 5856 has no application to it, other than merely furnishing the basis for the calculation of the amount of paid-up insurance the assured was entitled to, as provided for in the proviso of section 5859.

These conflicting contentions are very earnestly and ably presented by counsel for appellants and respondent. Will say, however, for this court to undertake to discuss and review every phase of the questions to which our attention is directed, would make a volume. This is a new question, and one of first impression. Neither this court, nor the courts of any of the other States, so far as we have been able to discover, have ever been called upon to determine the precise question involved in this case.

The policy upon which this suit is predicated was issued and delivered April 9, 1896, in Missouri, to a citizen in Missouri. It was issued by a corporation of the State of New York, then doing a life insurance business in Missouri. It is conceded by both parties that this policy of insurance is a Missouri contract.

In the application for insurance in this case, which by the policy is made a part of the contract, it was agreed between the parties that the contract of insurance should be subject to and based upon the laws of the State of New York. Until the enactment of section 5859, supra, the law was well settled by this court, as well as the Supreme Court of the United States, that provisions in a policy similar to the provisions contained in the policy before us, could be of no avail to the insurer; that notwithstanding the provisions in the contract, the policy of insurance would be construed under the statutes of Missouri. See cases of Cravens v. New York Life Insurance Co., 148 Mo. 583, which was affirmed by the Supreme Court of United States, 178 U. S. 389, and Equitable Life Society v. Clements, 140 U. S. 226.

We are now confronted with a statute for construction, which extends the contractual powers of the parties in a contract for insurance, and authorizes them, in respect to this particular subject, to insert provisions in an insurance policy that, under the cases cited, were of no effect under the law in force at the time the conclusions were reached in those cases. Hence, the remark of the trial judge, in his opinion, was very appropriate when he said:

"It seems to me that this section (5859) is a legislative recognition of the rights of the parties to contract with reference to the insurance laws of other States, and in that respect it may be regarded as repealing legislatively, we might say, the decisions which I have mentioned."

In the case of Epperson v. Insurance Co., 90 Mo.

App. 436, section 5859 was directly in judgment before that Court. Ellison, J., speaking for the court, said:

"It will be seen that this act materially changes the old section, for it, in the first part thereof, clearly relieves the policy of a company organized in a foreign State from the effect or application of section 5856, if the laws of the State prescribe a surrender value or paid-up or temporary insurance in case of default in payment of premiums, and the policy shall contain an agreement for these things as they are prescribed by said laws. And the last part of said act, by proviso, makes a material addition to the old section. It extends the period in which a policy may be forfeited from two years, as provided in section 5856, to three years. The first part of the act . . . has, by its terms, application only to policies issued by foreign companies; the balance of the act, including the proviso, applies to all policies, whether foreign or local. In this case it was shown at the trial that the laws of the State of New York did prescribe a surrender value or paid-up or temporary insurance, in case of default in the payment of premiums. It was shown that the policy in suit contained an agreement for such surrender value, temporary or paid-up insurance as thus prescribed by the laws of said State. And it was also shown that the deceased had not made three payments of premium. It is therefore clear that the policy sued on was forfeited and void at the death of deceased."

The conclusion reached by Judge Ellison in that case is in harmony with our views as to the *proper* construction of that statute. The Legislature by the enactment of section 5859 clearly contemplated the extension or broadening of the powers of the contracting parties, in respect to insurance. This policy, from its provisions, clearly falls within the terms of section 5859, and the liability of the respondent must flow from the application of the terms of that section.

It is insisted by appellants that section 5859 should

be so construed as though the words, "after payment of two annual premiums," were written into each prescription of the agreements. In other words, it is contended that this court should so interpret and read that section that those words would be added to it. "Courts do not sit to say what the law ought to be; but it is their duty to declare the law as they find it," leaving its wisdom and policy to the Legislature. In the exercise of our judicial power, it is our duty to so interpret the law as to make it harmonize with the intent of the lawmakers; but we are limited, even in the application of this principle, to a judicial interpretation, which by no means contemplates the power to amend the law as handed us for construction. This section is not ambiguous; it is simply to be construed as meaning what it says. Parties are not compelled to contract under its provisions; but if they do, the liabilities are to be determined from giving the terms of the statute their ordinary and familiar signification and import.

It is next insisted that this policy does not fall within the body of section 5859 so as to render inapplicable the three preceding sections referred to, for the reason that the New York statute does not contain the necessary provisions to bring it within the purview of the requirements of section 5859, and it is also urged that the policy does not contain the required agreements, in respect to surrender value, temporary or paid-up insurance, upon default being made in the payment of premiums. Will say, in respect to such contention, that we have carefully examined the policy and the law of New York, as admitted in the stipulation, and from such examination, we have reached the conclusion that both the law of New York and the policy sued upon contains all the necessary provisions to bring this policy within the body of section 5859, and render inapplicable to it, the three preceding sections, 5856, 5857, and 5858, except so far as the proviso makes section 5856 applicable.

It will be observed that section 5859, in its requirements of what the other States shall prescribe and as to the agreement in respect thereto, to be inserted in the policy, uses the term disjunctively—that is to say, it provides that the State of the foreign company doing business in this State shall "prescribe a surrender value or paid-up or temporary insurance, in case of default of payment of premiums."

It is apparent, under the requirements of that section, that if the law of the foreign State and the policy provided for either of the methods of insurance, upon default in the payment of premiums, it was a substantial compliance with that section. It will be noted, by reference to the law of New York and to the terms of the policy, that provision was made for paid-up insurance, as well as temporary insurance. The fact that the policy made it optional with the insured, as to the character of insurance he would accept, did not place it outside the bounds of that section.

This brings us to the last contention of appellant, that is, that even if the policy does not fall within section 5859, the proviso entitles plaintiff to recover the full face of the policy under the provisions of section 5856. We are unable to reach the conclusion that the Legislature, by the proviso in section 5859, undertook to destroy the force and effect of the body of the act. If the policy in suit falls within the provisions of the body of the act, of section 5859, then section 5856, by the express terms of the statute, is not applicable; but appellants insist that the proviso which says: "Provided, that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up insurance, the net value of which shall be equal to that provided for in section 5856 of this article."

It is clear that if the Legislature intended to destroy the force and power of the body of the act, of section 5859, it would have used terms which would more clearly indicate such intent than is used in such proviso. If such was the intention, it could have avoided all confusion by simply saying that in cases where three annual premiums are paid and default is made, then the holder of the policy shall be entitled to such character of insurance as is provided by section 5856. Instead, we have in the proviso where three annual payments are made, the holder of the policy is entitled to "*paid-up insurance,* the net value of which shall be equal to that provided for in section 5856." It will be noted that section 5856 provides how the net value of the policy shall be computed when the premium becomes due and is not paid. It says:

"The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American experience table of mortality, with four and one-half per cent interest per annum, and after deducting from three-fourths of such net value any notes or other indebtedness to the company, given on account of past premium payments on said policy issued to the insured, which indebtedness shall then be cancelled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy, and the term for which such temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid."

Here we have provided for in express terms, temporary insurance for the full amount written in the policy, and it is insisted and very ably argued that this is the character of the insurance intended by the term *paid-up insurance,* in the proviso of section 5859. We are unable to agree to this contention.

It must be admitted that the science of life insur-

ance is in an advanced state in this country, and in the management of the immense increased business, in fact, in conducting any business involving the application of thorough business principles, certain terms are used, as applying to certain subdivisions of the business. We find upon the subject now before us, that not only individuals, but as well legislatures and courts, have recognized the application of certain terms to special classes of the business transaction. An examination of the laws of Missouri will demonstrate that the Legislature keeps clearly in view the distinction between *paid-up insurance* and *temporary* and *extended* insurance. The very term ''paid-up insurance'' conveys the meaning that no more payments are required, and we are of the opinion that when the Legislature is dealing with the subject of life insurance and uses the term ''*paid-up insurance*,'' it means an insurance for life, fully paid up.

Section 5857, Revised Statutes 1889, recognizes very clearly the distinction between paid-up insurance and extended insurance; upon that subject it provides:

''At any time after the payment of two or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of the policy may demand of the company, and the company shall issue, its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as the net value of the original policy at the age and date of lapse, computed according to the actuaries' or combined experience table of mortality, with interest at the rate of four per cent per annum, without deduction of indebtedness on account of said policy, will purchase, applied as a single premium upon the table rates of the company.''

In the case of Cravens v. Ins. Co., supra, the court fully recognizes the distinction heretofore mentioned. BURGESS, J., in that case, says:

''This section we think has reference solely to paid-up policies and gives the holder of a policy who is

entitled to extended insurance under section 5983, the right to compel the company within a limited time from the beginning of such extended insurance, to convert the extended insurance into a paid-up policy of a prescribed value, if he so desires."

The very terms of the section under discussion, section 5859, makes the distinction in its requirement of the foreign State "to prescribe paid-up or temporary insurance."

It becomes more apparent that the terms "*paid-up insurance,*" as used in the proviso, was not intended to refer to temporary insurance, as mentioned in section 5856, when we look at the amendment to section 5859, as contained in section 7900, Revised Statutes 1899 which provides:

"Sec. 7900.   The three preceding sections shall not be applicable in the following cases, to-wit:   If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for non-forfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable:   Provided, that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual premiums thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article."

It will be specially noted that the contrast is maintained all through the section, between temporary and

paid-up insurance and finally this is emphasized in the proviso, which provides for "*paid-up or extended insurance,* the net value of which shall be equal to that provided for in this article."

It is urged that *paid-up insurance* as used in the proviso of section 5859 should be construed to mean paid-up temporary insurance. To give it this construction would simply require judicial legislation by amending the section in that respect, and in order to make it fully fall within the provisions of section 5856, we would be required to make the additional amendment; that is to say, "paid-up temporary insurance, for the full amount written in the policy."

This amendment, by judicial construction, we are not willing to add to the proviso of section 5859.

We take it that the words in the proviso, "the net value of which shall be equal to that provided for in section 5856," have reference solely as to the computation of the net value of the policy, so as to ascertain the amount of paid-up insurance that can be bought. In other words, that reference to section 5856 in the proviso means that you shall compute the net value of the policy, in accordance with the provisions of section 5856, but it does not mean that the result of such computation shall purchase temporary insurance for the full amount written in the policy. If it had been so intended, it would have so stated, and would not have used the term paid-up insurance, which has such a well-understood meaning, under the laws of this State, as well as nearly every other State in the Union.

It is insisted that the terms in the proviso can not refer to computation of the net value, as provided in section 5856 alone, for the reason it is urged that the computation under that section can not be made applicable to paid-up insurance for life, as mentioned in the proviso. If a computation can be made, so as to invest the result in temporary insurance, the same cal-

culation will produce the same result to invest in paid-up insurance.

It will not answer the conclusion reached as to this policy, to say that this construction is unfavorable to the policy-holder. We are not prepared to say as to which construction would be most beneficial to the insured. The terms of the statute, and not the interests of either party, must control in the construction. Will say, however, that while in this particular case it may operate unfavorably to the insured, had he lived beyond the period to which his temporary insurance contended for, extended, and then had been unable to further pay the premiums, his temporary insurance, even for the full amount of the policy, would be of little benefit to him.

The adjudications upon insurance policies, even as numerous as they are, shed but little light upon the construction and application of this comparatively new statute, hence we have been left to apply to the terms of the statute under discussion, the common and approved use of such terms.

We have reached the conclusion that the policy upon which this suit is based, falls within the provisions of section 5859, Laws 1895, page 197, and that section 5856, Revised Statutes 1889, is inapplicable, except so far as the proviso in said section renders its application necessary in the computation of the amount to be applied to the payment of paid-up insurance.

With these views, we are of the opinion there was no error in the judgment by the trial court, and that the learned trial judge correctly interpreted the law, as applicable to this case, in his written opinion, and the judgment will be affirmed.

All concur.