BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1916.

MARY E. PAYNE, as Trustee, Appellant, v. MINNE-
SOTA MUTUAL LIFE INSURANCE COMPANY,
a Corporation, Respondent.

Springfield Court of Appeals. Opinion Filed December 16, 1916; Mo-
tion for Rehearing Granted January 1, 1917. Opinion Refiled
February 14, 1917.

1. **LIFE INSURANCE:** Reserve: Who Entitled to. In the absence
of a statute or some provision in the policy giving the assured the
right to the reserve, the reserve belongs to the insurance company
and not to the assured.

2. ————: Policies: Construction Placed on. Since an insurance
policy is prepared in advance by the insurance company and usu-
ally contains intricate technical provisions, it should be liberally
construed in favor of the assured.

3. ————: ————: Default in Payment of Premium: Extended Insur-
ance: How Calculated. Action on a life insurance policy. Provi-
sions of policy examined and reviewed. Held, that where, at the
time of default in payment of a premium the insured was in-
debted to the company, in ascertaining the sum available to ex-
tend the policy the indebtedness should be deduced from the sum
available to extend the policy had no indebtedness existed and
not from the total amount of reserve.

4. ————: ————: Statutory Provisions. Sec. 6946, R. S. 1909, is
not to be construed to prevent an insurance company and one in-
sured contracting for the application of more than three-fourths
of the reserve toward the purchase of extended insurance.

Appeal from Polk County Circuit Court.—*Hon. C. H.
Skinker*, Judge.

(512)

AFFIRMED.

*Rechow & Pufahl* and *Humphrey, Boxley & Reeves* for appellant.

*Butler, Mitchell & Hoke* and *Clyde Taylor* for respondent.

FARRINGTON, J.—This case was appealed from the circuit court of Polk county where judgment was rendered in defendant's favor. HONORABLE C. H. SKINKER, the judge before whom the case was tried in the circuit court, rendered a written opinion a copy of which is furnished us in respondent's brief. The disposition of the case made by him is so thorough and his finding so conclusively correct that we shall adopt his opinion as our opinion in this appeal.

In view of the fact that appellant is contending there is no forfeiture clause whatever in the policy in question we quote the following provision of the policy which is not set forth in Judge SKINKER's opinion: "Tenth: . . . If any premium, or any note given for premium or any indebtedness is not paid on or before the day when due, this policy shall become void, and all payments previously made shall remain the property of the Company, except as hereinbefore provided."

Judge SKINKER's opinion is as follows:

"This is a suit upon a life insurance policy, dated June 18, 1912, and issued in lieu of an assessment certificate, dated September 7, 1892. The policy in suit provided that in construing its provisions it shall be considered as having been in force from the 18th day of June, 1893, except as otherwise provided in the policy. As this policy was issued for a premium rated for a person of the age of the insured on June 18, 1893, it was issued subject to a lien and indebtedness of $326.74, bearing interest at five per cent. Item seven on the second page of the policy provides that: 'If said indebtedness shall ever exceed the reserve for this policy, computed as below provided, and according to the actuary's or combined

195 M. A.—33

experience table of mortality, the excess shall be paid by the insured.' Following said item seven is a table of the loan, paid-up, and extended insurance value of said policy at the end of each year, reckoning from the date of the surrender of said assessment certificate, which is the same as the date of the issuance of this policy. Following said table in the policy is a provision that if no request for paid-up insurance is made, in case default is made in the payment of any premium, the insurance shall be automatically extended according to said table, provided, that should any indebtedness to the Company exist, then in ascertaining the single premium upon which the calculations for extended insurance are to be made, such indebtedness shall first be deducted and the net premium thus arrived at shall form the basis for the said calculations, and the calculations shall result in a proportionate and equitable reduction of the term of extended insurance.

"The assured made default in the payment of the premium due June 18, 1913. At this time the reserve on the policy was $809.16, but the assured was then indebted to the Company in the sum of $713.83, of which indebtedness $558.83 was the $326.74 with interest referred to in the policy, and the balance represented a loan of $155 made to the assured on June 26, 1912, of which last amount $65 was to apply on the premium payment due June 18, 1912.

"The assured died on April 21, 1914. If the assured had not been indebted to the Company at the time he made default in the payment of premium, on June 18, 1913, the policy would have been automatically extended for seven years and six months. The net single premium necessary to extend said policy for seven years and six months was $646.82, and the net single premium necessary to extend said policy from June 18, 1913, the date of default, to April 21, 1914, the date of the assured's death, is $77.01.

"The facts as thus outlined are either admitted or clearly established, and upon them two principal questions arise:

''First: Does the nonforfeiture statute, section 6946, Revised Statutes 1909, providing that three-fourths of the reserve shall be taken as the net single premium for extended insurance apply to and control this policy? If the statute applies, then plaintiff cannot recover, as three-fourths of the reserve does not equal the indebtedness, and there was nothing to extend the policy.

''Second: If the statute does not apply, then under the terms of the policy, was the indebtedness due from the assured to the Company, to be deducted from the entire reserve of said policy, or shall said indebtedness be deducted from the sum required to extend said policy seven years and six months? If the indebtedness should be deducted from the sum required to purchase seven years and six months' extended insurance, then again plaintiff cannot recover. If, however, the indebtedness should be deducted from the entire reserve of said policy, then would remain a sum sufficient to extend said policy beyond the date of the assured's death, and the plaintiff is entitled to recover.

''Considering the second proposition first, and construing the policy as though the statute does not control, does the policy provide that upon default in the payment of premium, the indebtedness of the assured to the Company shall be deducted from the entire reserve and the sum thus obtained used to extend the policy?

''Plaintiff contends that not to give the assured the benefit of the entire reserve is to virtually read a forfeiture, a thing the law abhors, into the policy; that the reserve is but the accumulation of the money the assured has paid to the Company and that he ought to have the benefit of it.

''But the law seems to be settled that in the absence of a statute, or some provision in the policy giving the assured a right to the reserve, the reserve belongs to the insurance company and not to the assured. [State ex rel. Supreme Lodge Knights of Pythias v. Vandiver, 213 Mo. l. c. 214, 111 S. W. 911.]

''If the reserve belongs to the assured and not to the Company, then section 6946 giving the assured the

benefit of three-fourths of the reserve, and usually re-
ferred to as the nonforfeiture statute, deprives the as-
sured of one-fourth of the reserve he would otherwise get,
and is, to that extent, a forfeiture statute.   I think it
is clear that no question of forfeiture is involved.

"Plaintiff also contends that as insurance policies
are prepared in advance by the insurance companies and
usually contain intricate technical provisions they should
be liberally construed in favor of the assured.   This is
unquestionably the law.   It is a rule applicable to all com-
plicated contracts carefully prepared in advance by one
of the contracting parties who has made and who im-
poses his own conditions.   The application of such a rule
is frequently necessary to protect the other party to the
contract.   But we are now dealing with only one pro-
vision of the policy, that concerning the reserve available
for extended insurance, and if the rule invoked has no ap-
plication to this provision, then the fact that the policy
contains other provisions to which the rule would apply,
if any issue should arise upon them, is of no consequence.

"Plaintiff claims that section 6946, Revised Statutes
1909, does not apply for the reason that the policy is
more liberal to the assured than the statute and the stat-
ute should be construed as a minium provision for the
assured.   The statute provides that three-fourths of the
reserve shall be taken in ascertaining the premium avail-
able to extend the policy, and if the policy in suit is more
liberal to the assured than the statute it is because the
policy gives the assured the benefit of more than three-
fourths of the reserve.   Conceding, for the present that
plaintiff's construction of this statute is correct, still the
statute must be taken as establishing what in the judg-
ment of the Legislature is an equitable provision for the
assured when the policy makes no provision for extended
insurance.   But, if the policy is more liberal to the as-
sured than the statute, should the court strain after a
construction that will be favorable to the assured?   To
do so would be to penalize the insurance companies which
are the most liberal, for, if an insurance company fails

to give the assured the benefit of as much as three-fourths of the reserve of his policy for extended insurance, the statute applies and gives him three-fourths of the reserve, but no more.

"If, however, the policy gives the assured the benefit of more than three-fourths of the reserve, for extended insurance then to apply the rule in question would be equivalent to the court saying to the insurance companies, 'As you have been more liberal to the assured than the law required you to be, we will now see if it is possible to so construe the policy as to give the assured the benefit of all the reserve.'

"I therefore think that this rule of construction gives but little aid in determining what effect should be given to this provision of the policy.

"It is admitted that if the assured had not been indebted to the Company the policy would have been automatically extended for seven years and six months and that $646.82 was the amount, taken as a single premium, necessary to extend the policy for that time. It is also admitted that this amount could have been easily ascertained at any time, from facts stated in the policy, by well known actuarial rules.

"That only provisions in the policy for extended insurance are those already stated and if the assured had not been indebted to the Company the policy would have been extended for seven years and six months. The policy provides that should any indebtedness exist then in ascertaining the single net premium upon which the calculations for extended insurance are to be made such indebtedness shall first be deducted and the net premium thus arrived at shall form the basis for said calculations and shall result 'in a proportionate and equitable reduction in the term of extended insurance.'

"Does this mean that if the assured was not indebted to the Company he would have been entitled to have $646.82, or say 80 per cent of the reserve, applied to extend the policy, but that if he was indebted to the Company, then the mere fact that he owed the Company gave him the right to the whole of the reserve?

"If the policy should be so construed then the assured could have borrowed $50, $100 or $150 from the Company and still have been entitled to more than seven years and six months' extended insurance. In other words, the existence of indebtedness would result in increasing the term of extended insurance when the policy provides that such indebtedness shall result in a proportionate and equitable reduction of said period. I do not think this is a fair or reasonable construction of the policy.

"It is urged by plaintiff's counsel that equally absurd results may arise under other provisions of our insurance statutes. But this is merely equivalent to saying that the Legislature in attempting to regulate insurance has made some mistakes, for, it is not to be presumed that the Legislature intended to produce unreasonable and absurd results. We should rather presume that the Legislation referred to will be corrected so that it will be just and reasonable. The fact that the Legislature has enacted statutes that sometimes produce unreasonable or absurd results should not be taken as a precedent authorizing the court to give an unreasonable construction to a contract not controlled by such statutes.

"Suppose the Legislature should correct the statutes referred to which have no application to this case, then in a suit hereafter arising upon a policy and facts similar to those in suit should the court contrue the policy differently because there were no legislative absurdities to point to as precedents?

"Mistakes by one department of the government cannot be accepted as a license to some other department to likewise err.

"I therefore conclude that as the table for extended insurance in the policy shows that approximately 80 per cent of the reserve must have been taken as a single premium for extending the policy and as the policy provides that the indebtedness of the assured to the company must be deducted, and shall result in a proportionate and equitable reduction of the term of extended in-

surance, that the indebtedness should be deducted from the sum which would have been available to extend the policy had no indebtedness, existed. If this is not what the policy means then there is nothing in the policy which shows from what sum or amount the indebtedness must be deducted and in such case the statute giving the assured the benefit of only three-fourths of the reserve would apply.

"These conclusions make it unnecessary to decide whether the nonforfeiture statute applies to and controls the policy as under any view taken the judgment must go for the defendant."

Respondent raises the point that appellant could not recover under this policy for the reason that the statute (sec. 6946, R. S. 1909) precludes either the assured or the insurer from applying any part of the reserve, in the event of a lapse in premium payments after three years, except three-fourths of such reserve; in other words, respondent contends that since the enactment of that statute an insurance company and an assured will not be permitted to contract for the application of any more than three-fourths of the reserve toward the purchase of extended insurance. The cases cited (Gillen v. New York Life Ins. Co., 178 Mo. App. 89 161 S. W. 667; Smith v. Mutual Benefit Life Ins. Co., 173 Mo. 329, 72 S. W. 935; Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S. W. 519; Nichols v. Mutual Life Ins. Co. of N. Y., 176 Mo. 355, 75 S. W. 664) are cases which hold that where the terms of the policy do not give as much as three-fourths of the reserve toward the purchase of extended insurance the statute will control the contract. The courts passing on the question in those cases were not dealing with instances wherein the insurance companies had contracted for a greater percentage of the reserve than three-fourths. We do not think the statute can be so construed nor do we think the cases cited sustain the respondent's contention made in this case. The facts in those cases were directly contrary to those of the case before us.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.