BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1910.

---

HELEN K. FAHLE, Respondent, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.

St. Louis Court of Appeals, December 30, 1910.

1. LIFE INSURANCE: Non-Payment of Premiums: Policies Automatically Non-Forfeitable: Statutes Construed. One of the purposes of sections 7897 to 7900, inclusive, Revised Statutes 1899 is to prevent life insurance companies inserting in policies conditions of forfeiture or restriction except as the statutes permit; and section 7900, by specifying four cases in which the three preceding sections shall not be applicable, necessarily implies that those sections shall control in all cases not so specified, whatever be the form of the policy.

2. ———: ———: ———: Paid-up Policy: Statutes Construed. A provision for paid-up insurance contained in a policy must come strictly within the cases specified in section 7900, Revised Statutes 1899, in order to render section 7897 inapplicable.

3. ———: ———: ———: ———: Demand Necessary: Statutes Construed. Where insured, after paying three full annual premiums on an endowment policy, defaulted in the payment

of a premium two months and five days before his death, but made no demand for a paid-up policy, under section 7898, Revised Statutes 1899, in determining whether the net value of the non-forfeitable, paid-up insurance provided for in the policy, in case of default in the payment of premiums, was equal to that provided for in the article in which section 7900 is contained, as is required by the proviso to that section in order to make the provisions of section 7897, providing for temporary insurance, inapplicable, the provisions of section 7898 that, in case the policy is of the endowment type, the paid-up policy to be issued shall be for "an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums actually paid shall bear to the number of such annual premiums stipulated to be paid," are not to be considered; the failure of the holder of the policy to demand paid-up insurance rendering section 7898 inapplicable.

4. ———: ———: ———: ———: **Net Value: Section 7898 Construed.** The method of computing the amount of a paid-up policy to be issued on demand of the holder where he has defaulted in the payment of a premium on an endowment policy after paying three annual premiums, as provided by section 7898, Revised Statutes 1899, has no relevancy to "net value," as that term is generally understood and used in insurance laws, but is an arbitrary apportionment, not based upon the general purpose of the non-forfeiture laws, which is to provide that at least three-fourths of the "net value" accumulated out of his payments shall be applied toward purchasing extended or paid-up insurance, in case he defaults in the payment of a premium, after three annual premiums have been paid.

5. ———: ———: ———: ———: ———: ———. It does not follow that because, under section 7898, Revised Statutes 1899, the insured could, by demanding same, have obtained paid-up insurance for an arbitrary amount, computed regardless of "net value," a provision in the policy, entitling him to the same amount of paid-up insurance, without demand, would be a sufficient compliance with section 7900 and its proviso to render section 7897 inapplicable.

6. ———: ———: ———: **Net Value of Endowment Policy: Section 7900 Construed.** In determining whether or not the non-forfeitable, paid-up insurance provided for in an endowment policy, in case of default in the payment of any premium after three annual premiums have been paid, is sufficient, under the proviso to section 7900, Revised Statutes 1899, to render the three preceding sections inapplicable to the policy, it is essential to first determine the net value of the policy in accord-

ance with the provisions of section 7897 and then ascertain how much paid-up insurance can be bought with three-fourths of such net value, and if the amount of paid-up insurance provided for in the policy is less than the amount three-fourths of such net value would purchase, section 7897, providing for temporary insurance for the full amount of the policy, in case of default in the payment of any premium after three annual premiums have been paid, is applicable.

7. ———: ———: ———: ———: ———: **Facts Stated.** Where insured, after having paid more than three annual premiums on an endowment policy, payable on a specified date or at death, made default in the payment of premiums, and at the date of default three-fourths of the net value, computed as directed by section 7897, Revised Statutes 1899, amounted to $47.86, while the net value of the paid-up insurance provided in the policy was only $42.79, and the sum of $47.86 would purchase extended insurance, under section 7897, for a term extending beyond the date of insured's death, the amount of paid-up insurance so stipulated in the policy was not sufficient, under the proviso to section 7900, to make section 7897 inapplicable, and hence insured's beneficiary was entitled to recover the full amount of the policy.

**Dissenting Opinion by Judge Nortoni.**

8. ———: ———: ———: **Statutes Construed.** Sections 7897 to 7900, inclusive, Revised Statutes 1899, relating to life insurance policies, are *in pari materia*, and must, therefore, be read and interpreted together.

9. ———: ———: ———: ———: **"Paid-Up Insurance" and "Extended Insurance" Technical Terms.** The terms "paid-up insurance" and "extended insurance" in the proviso to section 7900, Revised Statutes 1899, are technical terms, possessing and signifying a separate and distinct meaning peculiar to each in insurance law.

10. **STATUTES: Construction: Technical Terms.** The legislative mandate touching the construction of statutes is, that technical terms and words shall be given their appropriate and peculiar meaning in accord with their technical import.

11. **LIFE INSURANCE: Non-Payment of Premiums: Policies Automatically Non-forfeitable: Paid-Up Policy: Net Value.** Although section 7897, Revised Statutes 1899, provides a standard (the combined experience table of mortality) by which, though computation, the net value of a policy is to be ascertained, a policy may have a net value, notwithstanding it is not computed under that statute, and a paid-up policy issued in accordance with section 7898 for an amount bearing such pro-

155 App.—2

portion to the amount of the original policy as the number of the complete annual premiums actually paid bore to the number of such annual payments stipulated to be paid has a net value, although it was not computed at all.

12. ———: ———: ———: ———: ———: **Section 7900 Construed.** In determining whether or not the provisions of a life insurance policy for extended or paid-up insurance, upon default in the payment of a premium, after three annual premiums have been paid, are sufficient, under the proviso to section 7900, Revised Statutes 1899, to render the three preceding sections inapplicable, the net value of the extended insurance, under the proviso to said section, is to be ascertained in accordance with section 7897, and the net value of the paid-up insurance is to be ascertained in accordance with the provisions of section 7898; and if an endowment policy contains a provision for automatic commutation to non-forfeitable, paid-up insurance, upon default being made in the payment of any premium, after three annual premiums have been paid, such paid-up insurance is sufficient to satisfy the requirements of section 7900 and its proviso, and thereby render section 7897 inapplicable, if it is equal to the net value of paid-up insurance provided for in section 7898.

13. **STATUTES: Rules for Construction.** In construing statutes, the intention of the Legislature is to be ascertained and effectuated.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*A.* and *J. F. Lee* for appellant.

The provision in the policy for paid-up non-forfeitable insurance for $118 is valid under the laws of Missouri and binding on respondent. R. S. 1899, secs. 7898-7900; R. S. 1879, secs. 5984-5986; R. S. 1889, secs. 5857-5859; Sess. Acts 1895, sec. 1 to 197; Sess. Acts 1899, secs. 12-13, pp. 247-8.

*Joseph Block* for respondent.

(1) There is nothing before this court for review. (a) Because there were no exceptions taken to any

rulings of the trial court on admission or rejection of testimony, and no declarations of law asked or given. Bank v. Fiske et al., 115 S. W. 495; Hill et al. v. Kingsland, 131 Mo. 648; Thies v. Garbe, 88 Mo. 146; Parkinson v. Caplinger, 65 Mo. 295. (b) This court will not in an action at law weigh the evidence and determine whether or not the finding of the trial court was correct on the evidence, or misapplied the law to the facts, in the absence of instructions. Riffe v. Railroad, 72 Mo. App. 225. (2) There being substantial evidence in the record to support the finding of the court, the cause having been tried by the court without the aid of a jury, the judgment must be affirmed. Lavin v. Life Ins. Co., 101 Mo. App. 435; Price v. Life Ins. Co., 48 Mo. App. 296. (3) By the term "net value," as used in section 7900, Revised Statutes of Missouri 1899, is meant the net value as computed according to the rule laid down in section 7897, Revised Statutes of Missouri 1899; the last mentioned section being the only one which provides a rule for the ascertaining of net values. Price v. Life Ins. Co., 48 Mo. App. 295.

STATEMENT.—This is a suit by the beneficiary on a life insurance policy for the full amount thereof, one thousand dollars. The trial was to the court upon an agreed statement of facts from which we deduce the following:

The policy is a continued payment endowment policy, payable at a certain time, August 21, 1947, or at death. It provided for an annual premium of $23.29 payable on August 21st in every year during the continuance of the policy. The policy being issued July 1, 1902, the insured, Henry J. Fahle, paid $1.18, which carried the insurance to August 21, 1902, the date for the payment of the first annual premium. By agreement it was arranged that the annual premium might be paid by quarterly installments of six dollars each, payable on the 21st day of August, November, February and

May during the continuance of the policy. The insured made payment of all the quarterly installments of premiums due under the policy up to and including that due February 21, 1908, but made default as to the one due May 21, 1908, at age 36, and continued in default until his death, two months and five days later. Proof of death was duly made. The policy contained a provision entitling the holder, in case of default in the payment of premiums, to have paid-up endowment insurance for the same term as was the original insurance, the amount of such paid-up insurance to be determined by a table printed on the policy. According to said provision and the table mentioned, the paid-up insurance to which the holder was entitled, after paying five complete annual premiums and three quarterly installments of the sixth annual premium, was one hundred and eighteen dollars.

The net value of such paid-up insurance computed at the time of default according to the Actuaries' or Combined Experience Table of Mortality with four per cent interest per annum would have been $42.79. Three-fourths of the net value of the policy in suit, computed at the time of default, upon the Actuaries' or Combined Experience Table of Mortality, with four per cent interest per annum, was $47.86. If this amount of $47.86 be taken as a single net premium for the purchase of paid-up insurance or extended term insurance, in accordance with the provisions of sections 7897-7898 of the Revised Statutes of Missouri 1899, the net value of such paid up or extended term insurance at the date of purchase would in any case be equivalent to the said amount, to-wit, $47.86. This sum, $47.86, if applied as a net single premium for temporary insurance for the full amount written in the policy, to-wit, one thousand dollars, at the age of insured at the time of default of premium, upon the basis of the Actuaries' or Combined Experience Table of Mortality with four per cent interest per annum, would have been sufficient to pro-

vide such insurance for a period extending beyond the date of death of the insured.

At the time of the failure to pay the premium due on said policy, to-wit, May 21, 1908, no conditions of said policy had been violated other than the payment of premium.

The court made a finding and rendered judgment in favor of the plaintiff for the full amount of the policy, one thousand dollars, and interest at six per cent per annum to the day judgment was rendered. After an unsuccessful motion for a new trial and in arrest of judgment, the defendant has duly prosecuted its appeal to this court.

CAULFIELD, J. (after stating the facts).—Both parties agree that the policy in suit is a Missouri contract and as the only question presented is to be decided by a construction of, and reference to, sections 7897 to 7900, inclusive, of the Revised Statutes of Missouri of 1899, we will set forth their substance at the outset of this opinion, omitting parts not important to the controversy.

"Section 7897. Policies non-forfeitable, when.—No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, . . . shall, after payment upon it of three annual payments, be forfeited or become void, by reason of non-payment of premiums thereof, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries' or combined experience table of mortality, with four per cent interest per annum, and . . . three-fourths of such net value shall be taken as a net single premium for temporary insurance for the full amount written in the policy; and the term for which said temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time

of default of premium, and the assumption of mortality and interest aforesaid; but, if the policy shall be an endowment payable at a certain time, or at death, if it should occur previously, then, if what remains as aforesaid shall exceed the net single premium of temporary insurance for the remainder of the endowment term for the full amount of the policy such excess shall be considered as a net single premium for a pure endowment of so much as said premium will purchase, determined by the age of the insured at date. of default in the payment of premiums on the original policy, and the table of mortality and interest aforesaid, which amount shall be paid at end of original term of endowment, if the insured shall then be alive."

"Section 7898. Paid-up policy may be demanded, when.—At any time after the payment of three or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of a policy may demand of the company, and the company shall issue, its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as three-fourths of the net value of the regular policy at the age and date of lapse, computed according to actuaries' or combined experience table of mortality, with interest at the rate of four per cent per annum, . . . will purchase, applied as a net single premium upon the said table of mortality and interest rate aforesaid; *and in case of a limited payment life policy, or of a continued payment endowment policy, payable at a certain time, or at death, it shall be for an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums actually paid shall bear to the number of such annual premiums stipulated to be paid."* (Italics our own.)

"Section 7899. Rule of payment on commuted policy.—If the death of the insured occur within the .term of temporary insurance covered by the value of the pol-

icy as determined in section 7897, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding."

"Section 7900. Foregoing provisions inapplicable, when.—The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for non-forfeitable paid-up insurance, or if the legal holder of the policy shall within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable: Provided, that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual payments thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article."

Defendant states that the only question before us is, "Did the policy in suit meet the conditions of the proviso to section 7900 as to the amount of paid-up insurance given?" That is to say, did the policy entitle its holder to paid-up insurance "the net value of which shall be equal to that provided for in this article?" If it did, then the provision for paid-up insurance was binding upon the insured, the insured could not recover more than one hundred and eighteen dollars, and the

finding and judgment of the trial court were erroneous. If it did not, then the judgment of the trial court should be affirmed. Defendant contends that the proviso is satisfied if the paid-up insurance provided for in the policy equals or exceeds in amount that paid up endowment insurance which the insured might have demanded upon the policy, it being an endowment policy, by virtue of the above italicized portion of section 7898. On this theory the amount of the paid up insurance need have been only $111.11 while in fact it was $118.00.

Plaintiff contends that the proviso is not satisfied unless the amount of paid-up insurance provided for is at least equal to the greatest amount of paid-up insurance that could be bought with the net value of the original policy, computed at the time of default as provided in section 7897. On this theory the amount of paid-up insurance was insufficient, for it is agreed that it would have taken only $42.47 of net value to purchase $118.00 of paid up insurance, while three-fourths of the net value of the original policy available to purchase paid-up insurance at the time of default was actually $47.86.

One of the purposes of these statutes is to prevent the insurance companies inserting in their policies conditions of forfeiture or restriction, except so far as the statute permits. And section 7900 by specifying four cases in which the three preceding sections "shall not be applicable" necessarily implies that those sections shall control all cases not so specified, whatever be the form of the policy. [Equitable Life Insurance Society v. Clements, 140 U. S. 226.]

That a provision for paid-up insurance contained in a policy must come strictly within the cases specified in section 7900 is evidenced by the action of our Supreme Court in holding that a provision was not "unconditional" if it provided that the paid-up policy should issue "on demand made within *six months,*" although such provision was more liberal than section 7898 which

provided for paid-up insurance on demand made within
*sixty days.* [Cravens v. Ins. Co., 148 Mo. 583, 50 S.
W. 519.] The court there held that section 7898 was
not applicable in any event because the holder of the
policy had not demanded the paid-up insurance. Such
is the case here. No pretense is made that any demand
was made for paid-up insurance. Either the provision
in the policy is sufficient, under section 7900 and its
proviso, to render section 7897 inapplicable, or else the
plaintiff is entitled to recover the full amount of the
policy; it being conceded that if section 7897 is appli-
cable, the net value of the policy at the time of default
was more than sufficient to carry the insurance for its
full amount beyond the time when the insured died.
Undoubtedly section 7897 is applicable, unless the pro-
vision for paid-up insurance contained in the policy is
sufficient under section 7900 and its proviso to render
it inapplicable. By that proviso "the holder of such
policy shall be entitled to paid-up or extended insurance
the net value of which shall be equal to that provided
for in this article." The article referred to is of course
the one containing sections 7897 to 7900 inclusive.

We take it that the proviso means nothing else than
that in order to determine the amount of paid-up insur-
ance which the policy must have provided for in order
to render section 7897 inapplicable, we must first as-
certain the net value of the policy computed in accord-
ance with the provisions of the article, and then ascer-
tain how much paid-up insurance can be bought with
the net value so ascertained. The insured was entitled
to as much paid-up insurance as could be purchased
with the net value so ascertained. [Nichols v. Mutual
Life Ins. Co., 176 Mo. 355, 381, 75 S. W. 664.]

If then we ascertain what "net value" is provided
for "in this article" we can easily find the answer to
our question.

We have examined the article carefully and find
that the only place "net value" is provided for is sec-

tion 7897 and section 7898. Section 7897 prescribes the rule for computing the net value of the policy and provides that in a certain event three-fourths of the result of such computation shall be applied toward purchasing temporary or term insurance for the full amount of the policy. So far as the facts of this case are concerned, the rule of section 7897 is the same as to endowment insurance. Section 7898 prescribes a rule for ascertaining net value exactly like that prescribed by section 7897 and provides that at any time after the payment of three annual premiums, and not later than sixty days from the beginning of the temporary insurance provided for in section 7897, the legal holder of a policy may demand, and the company shall issue, its paid-up policy, which in case of an ordinary life policy shall be for such an amount as can be purchased with three-fourths of the net value of the regular policy at the age and date of lapse.

As above mentioned, section 7898 is inapplicable to the case at bar because the legal holder of the policy did not demand paid-up insurance. If either is applicable it is section 7897. They are both referred to at this point merely to show the only manner in which the article provided for "net value." Now, in so far as they refer to "net value" the said sections are to be read together. It has been held that section 7898 clearly indicates that the policies contemplated by section 7897 are such as will admit of the holder obtaining a paid-up policy under section 7898. [Westermann v. Supreme Lodge K. of P., 196 Mo. 670, 729, 94 S. W. 470.] And that "net value" as used in our non-forfeiture statutes is a technical term, to be given its technical meaning, and that it has but one meaning. [Rose v. Franklin Life Insurance Company, 153 Mo. App. 90, 132 S. W. 613.] Which is but another way of saying that "net value" as provided for "in this article" is the same as that provided for in section 7897.

Now the parties have stipulated in their agreed statement of fact that on May 21, 1908, (the time of default) three-fourths of the net value of said policy, computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, is $47.86.

It is apparent upon reading this stipulation that the "net value" of which said $47.86 is three-fourths, was computed in the manner provided in the article containing the sections under consideration, and is the only "net value" of the policy in suit, contemplated by said article, according to our construction. It is, therefore, the net value "provided for in this article" which the paid-up insurance provided for in the policy must have had in order to be sufficient to make inapplicable section 7897 under which plaintiff is entitled to the full amount of the policy.

As it is stipulated in the agreed statement of facts that the net value of the paid-up insurance provided for in the policy is only $42.79 it is plain that the said paid-up insurance is insufficient to render section 7897 inapplicable, and it is therefore applicable, and under it the plaintiff was entitled to the full amount of the policy and the finding and judgment of the trial court were correct and should be affirmed.

In arriving at the above conclusion we have considered the contention of counsel for defendant that the words "net value" should be taken to mean the provision for the amount of paid-up insurance the insured would have been entitled to if he had made demand therefor during his lifetime, as provided in the latter part of section 7898, but we cannot agree with it. That section provides that in case of a continued payment endowment policy the paid-up insurance which the insured would have been entitled to demand during his lifetime would have been "for an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums actually paid

shall bear to the number of such annual premiums stipulated to be paid." The method of computing the amount so provided for has no relation whatever to "net value" as the term is generally understood and as it is used in our insurance statutes. It is an arbitrary apportionment not based upon the general purpose of our non-forfeiture laws, which is to provide, in case the insured shall make default after he has paid three annual premiums, that at least three-fourths of the reserve or net value accumulated out of his payments shall be applied toward purchasing extended or paid-up insurance, and not be appropriated by the insurance company. [Rose v. Franklin Life Ins. Co., supra.]

While we have no right or inclination to criticize the provision, still we do not feel justified in holding that the words "net value" as used in the proviso to section 7900 point to and mean said provision, when there are other provisions in the article which respond to the call of the words in question by using and dealing expressly with them. Neither does it follow, as counsel suggests, that because under section 7898 the insured could, by demanding same, have obtained paid-up insurance of an amount computed regardless of "net value," therefore a provision in the policy entitling him to the same amount of paid-up insurance, without demand, would be a sufficient compliance with section 7900 to render section 7897 inapplicable.

Section 7898 has no application to this case, the insured having made no demand as thereby contemplated. And in Cravens v. Insurance Co., supra, it was held that even though the provision in the policy was more liberal than that of section 7898, still if it did not comply with the provisions of section 7900, it was insufficient. The court held in that case that notwithstanding the statute made a provision that a party should be entitled to paid-up insurance of a certain amount upon demand made within sixty days, a provision in the policy that he should have paid-up insurance

of that amount upon a demand made within six months was not a compliance with section 7900. We appreciate that that holding was based upon the statutory requirement that the provision for paid-up insurance must be "unconditional," but we think it demonstrates that the power of the insured to contract away his rights is limited and that giving him by contract what he might have obtained under section 7898 is not necessarily all that section 7900 contemplates.

We believe that the construction which we have given to section 7900 not only conforms to the strict letter of that section, but is in absolute harmony with the spirit and purposes of our non-forfeiture laws.

The judgment will be affirmed. *Reynolds, P. J.,* concurs; *Nortoni, J.,* dissents. *Judge Nortoni* deems this decision contrary to the decision of the Supreme Court in Nichols v. Mutual Life Ins. Co., 176 Mo. 355, 75 S. W. 664, and requests that the cause be certified to the Supreme Court. It is so ordered.

## DISSENTING OPINION.

NORTONI, J.—It is conceded the policy contained a provision by which non-forfeitable paid-up insurance was vouchsafed to insured of a net value equal to that which he could demand under section 7898, Revised Statutes 1899. Indeed, under that section, the insured could demand paid-up insurance in the amount of $111 only, whereas the provision contained in the policy for an automatic commutation assured to him paid-up insurance to the amount of $118. Of course the net value of a promise to pay $118 is greater than one to pay $111 and, therefore, no one denies or disputes the proposition that by the provision contained in the policy it was stipulated the insured should have paid-up insurance of a net value in excess of that which he was authorized to demand if he chose to demand a policy of that character. The four sections of the statute set

forth in the opinion are *in pari materia* and must therefore be read and interpreted together. Both the words "paid-up insurance" and "extended insurance" are technical terms which possess and signify a separate and distinct meaning peculiar to each in the insurance law. [Nichols v. Mut. Life Ins. Co., 176 Mo. 355, 75 S. W. 664.] The legislative mandate touching the construction of statutes is that technical terms and words shall be given their appropriate and peculiar meaning in accord with their technical import. [Sec. 8057, R. S. 1909.] In view of these precepts, I am persuaded that the words "extended insurance" and "paid-up insurance," employed in the proviso of section 7900, Revised Statutes 1899, refer, the one to section 7897, which contemplates and deals with "extended insurance," and the other to section 7898, which deals with "paid-up insurance" alone. Indeed, the proviso speaks of "paid-up" or "extended insurance" as provided for "in this article." There is but one section of the article which provides for "extended insurance" and that is section 7897, and while another and distinct section provides for "paid-up insurance;" that is section 7898. All of these sections are to be read together, as they deal with the same subject under different circumstances therein suggested, and the concluding words of the proviso to section 7900 essentially refers to both, for it employs the technical terms of "extended insurance" and "paid-up insurance," which is the subject-matter of the two separate sections, 7897 and 7898. Besides, the concluding words of the proviso to section 7900 expressly refer to "paid-up insurance" and "extended insurance," the net value of which shall be equal to "that provided for in this article."

Although section 7897 does provide a standard— the combined experience table of mortality—by which, through computation, the net value of a policy is to be ascertained, no one can doubt that a policy may have a net value, though it is not computed under that par-

ticular statute. In other words, it is clear that a *"paid-up" policy* "for an amount bearing such proportion to the amount of the original policy as the number of the complete annual premiums actually paid shall bear to the number of such annual premiums stipulated to be paid," as is provided for in section 7898, has a net value though it is not actually computed at all. This, in my opinion, is the net value contemplated by the Legislature when speaking of "paid-up insurance" in the proviso to section 7900, R. S. 1899. The relevant words of that proviso are "provided . . . in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article." The net value of what? The net value of extended insurance as provided for in this article if the provision for automatic commutation contained in the policy relates to extended insurance. As the only section of the article relating to extended insurance is section 7897, the validity of a provision for extended insurance contained in a policy would necessarily be determined under section 7897, but as that section omits to deal with "paid-up insurance," it is without application here. Section 7898 does provide for "paid-up insurance" and it is the only section in the article which touches on that subject-matter. It seems, therefore, if the policy contains a provision, as does this one, for an automatic commutation to non-forfeitable paid-up insurance upon the insured ceasing payment of the premiums as they fall due, such paid-up insurance is sufficient to satisfy the statute if it, the paid-up policy, is equal to the net value of the paid-up insurance provided for "in this article" which is mentioned alone in section 7898.

Furthermore, in construing the statutes, the intention of the Legislature is to be ascertained and effectuated. To this end, it is competent to look into the prior state of the law and examine the amendments in order

to ascertain the purpose of the change of phraseology. Our most recent prior statute on the subject was passed in 1895. [See Laws of Missouri, 1895, p. 197.] By this act the statute of 1889 was amended and in express terms the reader is referred by the amendment to section 5856, Revised Statutes 1889 for information on the question of net value. It was provided that the paid-up policy which might be stipulated for in the policy should have a net value equal to that provided in section 5856, which section in all material respects is the same as section 7897, Revised Statutes 1899, and furnished the combined experience table as the standard for ascertaining the net value. It appears, too, the proviso of section 7900, under consideration, first came into our law by the amendment of 1895, but instead of the proviso employing the words, "in this article" at that time, it referred in express terms to section 5856 for the standard of net value. Afterwards, in 1899, (see Laws of Missouri, 1899, p. 248), the statute was again amended by inserting the words, "or extended" immediately after the words, "paid-up insurance," and the reference to section 5856 was stricken out. In lieu of the express reference to one section of the article for a standard to which the net value of the paid-up policy is to be the equivalent, the Legislature added the words, "in this article." This, to my mind, manifests an intention on the part of the lawmakers to refer the matter of extended insurance provided for in a policy to the then section on extended insurance, which was section 5856, Revised Statutes 1889, for the equivalent in net value and refer the matter of paid-up insurance to section 5857, Revised Statutes 1889, which alone provided for paid-up insurance for the standard by which an equivalent in net value is required to be given; for both of these sections employing the technical terms of extended and paid-up insurance are part of the same article. By reference to the statute above referred to, it will appear

they are in all material respects the same as those set forth in the opinion in the order named.

I respectfully dissent from the reasoning of the court for the reasons suggested, in that it omits to reckon with the words "paid-up insurance" and "extended insurance," employed in the proviso of section 7900, as technical terms. These terms, in my opinion, relate alone to the two separate sections of the article for an ascertainment of the net value of the insurance which is required to be vouchsafed in the policy in order to relieve it from the operation of sections 7897 and 7899. As it appears from the opinion, the policy contains a provision assuring paid-up insurance equivalent in net value to that provided for in section 7898, which alone deals with paid-up insurance, it seems on this hypothesis it should be treated as if relieved from the operation of other sections of the article. I deem the opinion and judgment of the court to be in conflict with the judgment of the Supreme Court in Nichols v. Mutual Life Ins. Co., 176 Mo. 355, 75 S. W. 664, for the reasons stated and request that the case be certified to the Supreme Court for final determination.