GEORGE HEURING, APPELLANT, v. CENTRAL STATES LIFE INSURANCE COMPANY OF ST. LOUIS, MISSOURI, A CORPORATION, RESPONDENT.—— S. W. (2d) ——.

In the Springfield Court of Appeals.   October 3, 1938.

Rehearing Denied October 20, 1938.

*B. Hugh Smith* and *J. Grant Frye* for appellant.

*Ward & Reeves* and *Jones, Hocker, Gladney & Grand* for respondent.

*Frank W. McAllister, Allen May* and *Williams, Nelson & English* as *amici curiae.*

FULBRIGHT, J.—For the second time this cause is before us. The first opinion was written October 7, 1935, reported in 87 S. W. (2d) 661. On a proceeding in *certiorari*, reported in 112 S. W. (2d) 843, the opinion theretofore rendered was quashed. The cause was returned to this court and comes to the writer on reassignment.

The cause was tried in the Circuit Court of Scott County. The petition is in conventional form, and among other things alleges that on August 10, 1928, in consideration of an annual premium of $22.43, payable each year for twenty years, defendant issued its policy for $1000 on the life of Armela Louisa Heuring, then twelve years of age, and that her father, the plaintiff, was beneficiary; that on October 20, 1933, while the policy was in force, the insured died. Suit was instituted for the full amount of the policy, for ten per cent that amount for vexatious refusal to pay, for a reasonable attorney's fee, and for costs.

Defendant pleaded a special defense in which it alleges that upon the failure of plaintiff or the insured to pay the fifth annual premium, the reserve or net cash value at that time was applied by the company as provided in the special automatic loan privilege clause contained in the policy, which said privilege was requested by plaintiff in the application therefor; that the policy was thus continued to June 27, 1933; that the insured died October 20, 1933; that the policy was not in force at that time; and that there is no liability on the part of the defendant under said policy.

The plaintiff, in effect, admitted in his reply that defendant applied the reserve or net cash value of the policy as set forth in its answer, but denied that it had a right to do so, and denied that the policy expired June 27, 1933, alleging that said policy by its terms provided for extended insurance for the face amount thereof for the insured up to and beyond October 20, 1933, the date of the death of the insured.

The cause went to trial August 20, 1934, before the court and a jury. At the close of the evidence the submission to the jury was set aside and the cause submitted to the court which was by the court taken under advisement until November 20, 1934, when the issues were found against the plaintiff and in favor of the defendant. Being unsuccessful in his motion for a new trial, plaintiff duly appealed to this court.

The undisputed evidence shows that a twenty-year pay, non-participating insurance policy for the face value of $1000 was issued August 10, 1928, by the defendant on the life of Armela Louisa Heuring, that George Heuring, her father and plaintiff herein, was named beneficiary; that the insured was born on August 9, 1916; that she died October 20, 1933; that three annual premiums were paid on August 10, 1928, 1929 and 1930 respectively; that for the fourth annual premium, plaintiff executed and delivered to the insurer his promissory

lien note dated August 10, 1931, for $23.86 which included the fourth annual premium and $1.43 interest, to become due August 10, 1932. The note provided that if not paid when due it "would be automatically extended from year to year as long as premiums on said policy were duly paid; that if any premium on said policy was not paid when due, said note and accumulated interest should immediately become due and payable, and should, without notice of any kind, be paid by deducting the amount due thereon from the sum which by the terms of said policy was applicable to the purchase of insurance in the event of nonpayment of the premium when due, the balance only of said sum, if any, to be available for the purchase of insurance under and pursuant to the nonforfeiture provisions of said policy." The note was never paid and no further premiums were paid by the insured or the plaintiff. It is also undisputed that the reserve or cash value of the policy on August 10, 1932, was $33, and after deducting the indebtedness there remained a balance of $9.14.

Plaintiff relies on our nonforfeiture statutes and contends that when the note due on August 10, 1932, in the amount of $23.86 was not paid, and default was made in the annual premium due on said date, that according to the terms of the policy defendant was required to deduct this amount from $33, the cash surrender value of the policy on that date, which would leave a balance in the reserve of $9.14, and that plaintiff was entitled to have this residue applied as a net single premium for the purchase of extended or term insurance for the face value of the policy, thereby extending the policy to November 2, 1933, twelve days beyond the death of the insured.

Defendant contends that under the terms of the note and policy it had a right to, and did, apply the cash surrender value as provided by the special automatic premium loan clause, as requested in the application for insurance. It concedes that three annual premiums were paid in cash and that for the fourth, due August 10, 1931, plaintiff gave a premium lien note for $23.86 which included $1.43 interest, from August 10, 1931, to August 10, 1932. The fifth premium due August 10, 1932 was not paid, and as the reserve, or cash value of the policy on that date was not sufficient, after deducting the outstanding indebtedness, to pay the full premium, it was applied in accordance with the automatic premium loan provision to pay a semi-annual premium of $11.66 from October 10, 1932, to February 10, 1933. Upon failure to pay the semi-annual premium due on the last named date, and the cash value of the policy being insufficient, after deducting the outstanding indebtedness, to pay that premium, the defendant applied a part of the residue to the payment of a quarterly premium of $5.94 from February 10, 1933, to May 10, 1933. Insured failed to pay the quarterly premium due May 10, 1933, and on that date the residue, or amount of the re-

serve or cash value of the policy over the outstanding indebtedness, amounted to only $1, which was insufficient to pay the quarterly premium of $5.94 due. This sum of $1 was applied on May 10, 1933 to the purchase of extended insurance which continued the policy in force for a period of forty-nine days from said date, or to June 27, 1933. As the insured died October 20, 1933, the period of extended insurance expired prior to her death.

The policy upon which the suit is based, and which was introduced in evidence, contains the following provision:

"Surrender Values: After three full years' premiums have been paid the insured may at the end of any policy year, or within thirty-one days after the due date of any premium in default, surrender the policy and receive one of the following Options:

"(1) Extended Insurance, Automatic: To have the insurance for the face amount hereof continue as non-participating Term Insurance reckoned from the due date of the unpaid premium, or

"(2) Paid-up Life Insurance: To surrender this policy for paid-up policy, or

"(3) Cash Value: To receive the cash surrender value.

"If the insured shall not within the thirty-one days of grace make written request accompanied by this policy that it be endorsed for paid-up insurance as provided in Option (2) or that it be surrendered for the cash value as provided in Option (3) the insurance will be automatically continued as provided in Option (1)." No request was made by the insured or plaintiff herein.

Other pertinent provisions of the policy are as follows:

"Cash Loans: The company will loan on the sole security of this policy, properly assigned, any sum desired, provided the total indebtedness hereon shall not exceed the cash surrender value. Such loan may be made at any time after three full years' premiums have been paid out before default in the payment of premium and any unpaid premiums for the policy year in which the loan is made and interest at six per cent per annum in advance to the end of such policy year must be paid in cash or will be deducted from the proceeds of the loan. Interest at the aforesaid rate will be payable annually in advance thereafter and if not paid when due will be added to the principal.

"All or any part of the indebtedness hereon may be repaid at any time before default in the payment of a premium. Failure to repay such indebtedness or to pay interest thereon shall not void the policy but whenever the total indebtedness hereon equals the cash surrender value, the policy shall become void one month after the company shall have mailed notice to the last known address of the insured and any assignee of record.

"Table of Surrender and Loan Values: Values shown in the following table are available if premiums have been paid in full for the

number of years stated and if there is no indebtedness hereon; the surrender values will be adjusted proportionately for .semi-annual or quarterly premiums paid in addition to the premiums for complete policy years:

| After Policy has been in force | Paid-up Ins. | Extended Yrs. | Ins. Mos. | Cash Surrender or Loan Value |
|---|---|---|---|---|
| 3 years | $ 71 | 2 | 8 | $19 |
| 4 years | 122 | 4 | 9 | .33 |
| 5 years | 176 | 7 | .2 | 48 |
| 6 years | 231 | 10 | 0 | 64 |

"The company will at any time allow a cash surrender value on any Paid-up Term or Paid-up Life Insurance granted under Surrender Value Option (1) or (2) equal to the reserve thereon and will loan on security of such Paid-up Life Insurance any amount within the cash surrender value thereof.

"Reserve: The reserve on the Life Insurance Benefit of this policy shall be computed on the American Experience Table of Mortality with interest at the rate of $3\frac{1}{2}$ per cent per annum and after the twentieth year the surrender and loan values will be equal to the full reserve aforesaid.

"Special Premium Loan Privilege (Automatic Premium Loan Privilege): Any premium due hereon after three full years' premiums have been paid and which remains unpaid on the last day of grace will be advanced by the company as a loan against this policy if written request from the insured has been received at the Home Office when application is made for this policy or while this policy is in force without further action by the insured and provided the cash value of the policy at the end of the period with such advanced premium will cover is at least equal to the amount of such premium and interest thereon, together with any outstanding indebtedness hereon to the company. Subsequent premiums will be advanced from time to time as they fall due under like conditions.

"Any indebtedness thus created will be a first charge against the policy ranking in priority to the claim of any beneficiary or assignee. If the cash value or balance thereof be not sufficient to pay an entire premium and interest it shall be used to pay a semi-annual or quarterly premium if sufficient to do so.

"Such premium loans shall be subject to the same terms and conditions as cash loans, except that assignment of the policy shall not be required. Request for such premium loans may be revoked in writing by the insured at any time but such action shall not affect any loan that may have been previously made thereunder.

"The insured may resume payment of premiums at any time while this policy is thus carried in force without medical examination.

"General Provisions: Any indebtedness hereon to the company will be deducted in any settlement of this policy or from any cash

surrender value available hereunder. The period of extended insurance and the amount of paid-up insurance provided in Surrender Value Options (1) and (2) shall be such as the net cash surrender value, after deducting any indebtedness hereon, will purchase at the attained age of the insured at net single premium rates according to the reserve standard named herein.

"If any premium is not paid on the date when due this policy shall cease and determine, except as herein provided.

"Consideration: This insurance is granted in consideration of the application herefor, a copy of which is hereto attached and made a part of this contract, and of the payment in advance of Twenty-two and 43/100 Dollars, being the premium for term insurance ending on the 10th day of August, 1929. This contract will be continued thereafter upon the payment of the annual renewal premium of Twenty-two and 43/100 Dollars, on or before the 10th day of August in every year during the continuance of this policy, until premiums for twenty years from the date hereof shall have been paid. After delivery of this policy to insured, it takes effect as of August 10, 1928."

In the application attached to the policy the original beneficiary specifically requested the special automatic loan privilege.

The statutes involved are 5741-5744, inclusive, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., pages 4388-4396, inclusive). Section 5741 provides as follows: "No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this State shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, which notes and indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance (extended insurance). The amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness aforesaid." This section then outlines how the extended insurance shall be determined, etc.

Section 5742 sets forth what shall be done by the legal holder of a policy if he desires a paid-up policy after three or more annual premiums have been paid.

Section 5743 reads as follows: "If the death of the insured occur within the term of temporary insurance covered by the value of the

policy as determined in section 5741, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding: Provided, however, that notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy within ninety days after the decease of the insured; and provided also, that the company shall have the right to deduct from the amount insured in the policy the premiums that had been forborne at the time of the decease, including the whole of the year's premium in which the death occurs, but such premiums shall in no case exceed the ordinary life premium for the age at issue, with interest as last aforesaid.''

Section 5744 sets out the four exceptions under which sections 5741, 5742 and 5743 shall not apply, as follows: ''If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for nonforfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable: Provided, that in no instance shall a policy be forfeited for nonpayment of premiums after the payment of three annual payments thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article.''

Disposition of this case involves the construction of our nonforfeiture statutes and a determination of whether the automatic premium loan privilege clause is in conflict therewith. Plaintiff relies upon the following decisions: Gooch v. Metropolitan Life Ins. Co., 333 Mo. 191, 61 S. W. (2d) 704; State ex rel. Clark v. Becker et al., 335 Mo. 785, 73 S. W. (2d) 769; Liebing v. Mutual Life Ins. Co., 269 Mo. 509, 191 S. W. 250; Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560; Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S. W. 519.

In the case of Gooch v. Metropolitan Life Ins. Co., *supra,* the policy lapsed September 13, 1929, after twelve full annual premiums had been paid. The insured died December 8, 1929. That the plaintiff was entitled to recover under the provisions for term insurance contained in the policy was admitted by the company. The contention was over the amount to be paid. The cash value of the policy at the time

of default was $254.22, while the indebtedness against the policy at the time was $224.57, there being a residue in the cash value of $29.65. It was insisted by plaintiff that under the provisions of Section 5741, Revised Statutes of Missouri, 1929, as well as under the terms of the policy, the $29.65 due the insured "was available as a net single premium for extended or term insurance and was sufficient to provide said insurance for the face amount of the policy until after the death of insured."

The policy provided that "any indebtedness thereon will reduce the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default." Had this provision been valid, the face value of the policy, $1,000, would have been reduced to $118.26 as extended or term insurance. The court held the provision void because against the positive mandate of Section 5741, and in ruling thereon said: "The provision in the policy that indebtedness reduces the amount continued as term insurance in such proportion as the indebtedness bears to the cash value must be held invalid. It is in conflict with the statute which provides that such insurance shall never be less than the face value of the policy reduced by the indebtedness."

In the case of State ex rel. Clark v. Becker et al., *supra,* the court, in discussing the nonforfeiture statutes, among other things, had this to say:

"The three preceding sections (sections 5741-5743) prohibit the forfeiture of a life insurance policy after three premiums have been paid, and provide a plan for using the accumulated value of the policy for further insurance. This statutory plan is for automatic temporary insurance of the amount of the face of the policy for a limited term. [Sections 5741 and 5743, R. S. 1929 (Mo. Stat. Ann., sections 5741, 5743, pp. 4388, 4394).] It also establishes an optional provision for a reduced amount of insurance paid up for life which the policyholder may exercise by a demand within 60 days. [Section 5742, R. S. 1929 (Mo. Stat. Ann., sec. 5742, p. 4393).] The plain purpose of section 5744 is to give a policy holder some freedom to contract as he sees fit, rather than to hold him to the fixed statutory plan of only extended insurance as an automatic option, and, therefore, to allow the policyholder to contract for an automatic option for cash surrender or for either kind of insurance; namely, insurance for the full original amount paid up for a limited term or a reduced amount of insurance paid up for life. This seems clear from its present wording, and this meaning is confirmed by the wording of the original enactment of all four sections (Laws 1879, pp. 130, 131) and by the proviso later added to present section 5744. [Laws 1895, pp. 197, 198; Laws 1899, p. 248.] However, as well as granting the policyholder the right to choose his option, section 5744 prohibits a company from taking advantage of him by so wording the options

that none of them will go into effect unconditionally, or so that there will be no provision for some kind of insurance which could not be forfeited.''

In other words, freedom of contract is limited, so far as concerns extended insurance, to the exceptions contained in section 5744, and the clear inference to be drawn from the quotation above is that a contract entered into prior to default providing a plan that does not fall within the scope of the exceptions is without statutory authority and void.

In the case of Liebing v. Mutual Life Ins. Co., *supra*, in discussing the nonforfeiture statutes as they existed at that time, the court held:

''The statute being a part of the agreement and, by its force, extending the policy and binding the company 'to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding' (Sec. 7899, R. S. 1899; Sec. 6948, R. S. 1909), the death of the insured during the period of extended insurance, matured the policy 'according to its terms' and fulfilled the first condition in the cash option paragraph. To hold otherwise would be to permit provisions in the policy to nullify the express words of the statute. The same considerations lead to a like conclusion with respect to the second condition. If the fact that a premium payment has not been made avoids appellant's right to avail herself of the cash-option feature, the very thing the statute declares shall not affect her rights is allowed to destroy one of them. It is true the policy is to be construed as a whole. In construing it, however, the statute must be kept in mind, and portions of the policy eliminated by it cannot be invoked to effect the construction of what remains and of the statute itself.''

It further held ''that the non-forfeiture law (Sec. 7897, R. S. 1899, et seq.) constitutes a part of this policy and that it makes full and explicit provision as to what effect the failure to pay premiums shall have in cases falling within its purview. It is as applicable to policies which do not contain forfeiture clauses as those which do. It is mandatory. It disposes of the whole matter fixing with mathematical certainty the period of extension for policies to which it applies.''

In the Burridge case, *supra*, the history of the nonforfeiture statutes are reviewed and the amendments as well as the statutes themselves discussed. In connection therewith the court quotes with approval from the case of Smith v. Mutual Benefit Life Insurance Company, 173 Mo. 329, 72 S. W. 935, which case interpreted the clause in section 7897 (now section 5741) pointing out the rule for getting at the net sum to be applied to the purchase of temporary or extended insurance on default in the payment of the fourth or any subsequent annual premium, and held it to be mandatory. The Burridge case held ''that neither at the policy date or by any supplemental sub-

sequent contract, in legal effect an amendment to the policy, was it permissible to whittle away the mandate of the nonforfeiting statute reequiring the net value of the defaulted policy to be applied to extended insurance. If the deduction made from that net value are notes coming within the statutory description, it is well enough, but if they fall within the interdiction of the statute it is bad. It matters not whether the mischief be done when the policy was executed and springs from its own loins by use of a policy term forbidden by law, or whether it sprang up afterwards by indirection; because it ought not to be held that one can do in a circle what he cannot do on a straight line.''

In the case of Cravens v. New York Life Ins. Co., *supra,* the court, having under consideration the nonforfeiture statutes, held them to be mandatory and quoted with approval from Equitable Life Assurance Society v. Clements, 140 U. S. 226, as follows: ''The manifest object of the statute, as of many statutes regulating the form of policies of insurance on lives or against fires, is to prevent insurance companies from inserting in their policies conditions of forfeiture or restriction, except so far as the statute permits. The statute is not directory only, or subject to be set aside by the company with the consent of the assured; but it is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter. This clearly appears from the unequivocal words of command and of prohibition above quoted, by which, in section 5983, 'no policy of insurance,' issued by any life insurance company authorized to do business in this State, 'shall, after the payment of two full annual premiums, be forfeited or become void by reason of the non-payment of premium thereon, but it shall be subject to the following rules of commutation' and in section 5985, that if the assured dies within the term of temporary insurance, as determined in the former section, 'the company shall be bound to pay the amount of the policy,' 'anything in the policy to the contrary notwithstanding.' This construction is put beyond doubt by section 5986, which by specifying four cases (two of which relate to the form of the policy), in which the three preceding sections 'shall not be applicable,' necessarily implies that those sections shall control all cases not so specified, whatever be the form of the policy.''

The Supreme Court has summarized the holdings in the above cases in the following language: ''These cases hold that the provisions of our nonforfeiture statutes are mandatory; that they are a part of every insurance policy issued in this State whether mentioned therein or not; that they cannot be kept out of any policy, abrogated, waived, or contracted away by any agreement in the policy or made thereafter by the parties prior to default; that, while they do not limit the rights of the insured solely to extended insurance as provided for in section 5741 because section 5744 permits a choice

between four methods for application of the reserve or cash value upon default of a premium payment, freedom of contract between the parties is limited to a choice between these authorized options; and that, if any advance agreement is made for disposition of the reserve upon default, for which statutory authority cannot be found, it is unenforceable and void." [State ex rel. Heuring v. Allen et al., 112 S. W. (2d) 843.]

We have laboriously and painstakingly searched the books for cases applicable to the question before us, and it appears that the courts in this State have consistently and uniformly held that upon default of payment of premiums, after three or more full premiums have been paid, that the reserve or cash value, after the deduction of such indebtedness as may be properly charged against it, shall be applied as a net single premium for extended insurance, and that such action is made mandatory by what is now section 5741, unless made inapplicable by compliance with one or more of the four exceptions contained in section 5744. It is our conclusion that as the special automatic loan privilege clause provides a method for applying the reserve not contemplated in section 5741, and as the method provided in said clause does not fall within the purview of any of the four exceptions of section 5744, it is void.

"One of the purposes of these statutes is to prevent the insurance companies inserting in their policies conditions of forfeiture or restriction, except so far as the statute permits. And section 7900 by specifying four cases in which the three preceding sections 'shall not be applicable' necessarily implies that those sections shall control all cases not so specified, whatever be the form of the policy." [Fahle v. Conn. Mutual Life Ins. Co., 155 Mo. App. 15, 134 S. W. 60.]

"These statutory provisions become the supreme law of every policy 'anything in the policy to the contrary notwithstanding.' In the interpretation and construction of the policy contract they dominate and override all conflicting provisions. As to the matters mentioned therein these statutory provisions deprive the parties of freedom to contract. The object of these nonforfeiture statutes is to provide against forfeiture of policies for nonpayment of premiums by specifying that the net value of the policy shall be used in purchasing temporary insurance unless paid-up insurance is demanded within sixty days. These provisions cannot be contracted away except in the instance and in the manner provided by section 7900, Revised Statutes 1899." [Gillen v. New York Life Ins. Co., 178 Mo. App. 89, 161 S. W. 667.]

It will be noted that under the provisions of section 5741 extended insurance shall be computed "after deducting from three-fourths of such net value" the indebtedness against the policy, whereas the provision for extended insurance in the policy authorizes the deduc-

tion of such indebtedness from the full net value. Since the provision in the policy is more favorable to the insured than the statute, the policy will be followed. [Gooch v. Metropolitan Life Ins. Co., *supra*; Clark v. John Hancock Mut. Life Ins. Co., 58 S. W. (2d) 484.]

Although courts will take judicial notice of ordinary mathematical propositions, this rule is inapplicable to the ascertainment of a net value of a policy, depending party on extraneous facts, and partly on the accuracy of an intricate computation. [Liebing v. Mutual Life Ins. Co., *supra*; Leeker v. Prudential Ins. Co., 154 Mo. App. 440, 134 S. W. 676; Price v. Conn. Mutual Life Ins. Co., 48 Mo. App. 281.] However, we find that from the "Table of Surrender and Loan Values" contained in the policy which is in evidence and the data contained in the testimony of the actuaries there is sufficient evidence to show that if the $9.14, the undisputed balance in the net cash reserve on August 10, 1932, the date of default, be applied as a net single premium for the purchase of extended insurance, the policy would be extended for its face amount beyond the date of the death of the insured, and upon this basis plaintiff is entitled to recover.

We have carefully examined all the authorities relied upon by the defendant, as well as those cited by *amici curiae,* and find none that we think would justify us in altering our conclusions as heretofore expressed. This is true notwithstanding the case of Mutual Benefit Life Ins. Co. v. Commissioner of Insurance (Mich.), 115 N. W. 707, which held that "when a premium is paid by operation of the automatic premium loan provision, there is no default in premium payments within the meaning of subdivision 8 of section 1 of the statute. There is, on the contrary, an election by the policyholder not to make a default, the result of which would be the consequences or a consequence already stated." The automatic premium loan provision being valid under the laws of Michigan, and not in conflict with the nonforfeiture statutes of that State, which differ materially from ours, this decision seems to be sound, but it is not authority here. Since we hold that the automatic premium loan privilege clause is void as being in direct conflict with our nonforfeiture statutes defendant cannot avail itself of this void provision to prevent default.

The judgment is therefore reversed and the cause remanded with directions that the trial court enter judgment for the plaintiff in accordance with the views herein expressed. *Allen, P. J.,* and *Smith, J.,* concur.