## MEYN et al. v. ÆTNA LIFE INS. CO.
### No. 747.

District Court, W. D. Missouri, W. D.
Jan. 6, 1942.

On Motion for New Trial July 2, 1942.

Walter R. Barnes, of Kansas City, Mo., for plaintiffs.

Chas. C. Byers, and R. L. Hecker, of Morrison, and Nugent, Berger, Byers & Johns, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

The question for decision in this case is purely legal. The defendant issued its policy or contract of insurance upon the life of William F. Meyn. This policy bore date September 5, 1934, and was issued in exchange of a term policy upon the life of the insured in a larger amount. By the terms of the previous policy provision was made for the issuance of the policy sued on. All premiums were paid on this last policy for a period of five years, or until September 5, 1939, at which time the assured made default. The insured died on the 14th of July, 1940. By the terms of the policy the assured became entitled, because of reserve accumulations, to extended term insurance for a period of one year and two hundred days. It was in the contract that such "extended term insurance will be reckoned from the due date of the unpaid premium." It is conceded that if this provision of the policy remained unmodified by the parties, then the policy was in force at the death of the insured and the beneficiaries are entitled to recover. The defendant contends that such provision of the policy was superseded by an automatic loan provision of the contract. If such automatic loan provision became operative, then the plaintiffs would clearly not be entitled to recover. The automatic loan provision is designated as number "8" and is as follows: "If due written request for the operation of this provision has been filed at the Home Office of the Company before default in payment of premium, thereafter until a written revocation of said request has been filed with the Company, the amount of any premium not paid before the end of the grace period will automatically be loaned by the Company in payment of such premium and charged as an indebtedness secured by this policy, subject to interest at the rate of six per cent. per annum as prescribed for loans, provided that the total indebtedness hereunder will then be within the loan value described in Section 6."

No written request was ever filed by the assured "for the operation of this provision." In the "Application for Conversion of Term Policy" the defendant, without notice to the assured and after the application had been signed and delivered to it, inserted the words, "Automatic premium

loan provision." These words were meaningless as they appeared in the application for the reason that they were not responsive to any inquiry made of the insured.

The policy contained a printed statement obscurely placed on the inside of the first page, as follows:

"Request having been made in the application for this policy for the operation of the Automatic premium loan provision herein, this endorsement shall be deemed to make said provision effective until revoked.

"Aetna Life Insurance Company
"James B. Stimmon
"Secretary
"Form No. 886–A
"5–'34"

█ 1. The only question for consideration is whether this 'rather obscure notation would have the effect to modify the contract entered into between the defendant and the insured. It is fundamental that modifications of a contract must be made by the contracting parties acting by themselves or through agents. One party to a contract cannot alter its terms without the assent of the other party. The minds of the parties must meet as to the proposed modification. 17 C.J.S., Contracts, § 375, p. 860. This rule with respect to contracts applies with equal force to policies or contracts of insurance. "In order that there may be a modification, there must be an agreement therefor, supported by a consideration; neither party, whether the company or insured, has a right to modify the contract without the consent of the other party." 32 C.J. Section 250, p. 1142.

The Kansas City Court of Appeals, in the case of Welsh v. Chicago Guaranty Fund Life Society, 81 Mo.App. 30, loc. cit. 37, said: "After the rights of the insured and insurer were fixed by the contract so entered into there were some subsequent letters and notices by the defendant to the insured by which it was seemingly sought to repudiate or ignore the said pre-existing contract. These can not have the effect to alter the status of the parties as fixed by the contract nor have they any bearing on the issues in the case."

█ The contract sued on particularly stipulates that the automatic premium loan provision could only become operative "if due written request for the operation * * * has been filed at the Home Office of the Company before default in payment of premium."

The defendant seeks to justify its rather unusual course by saying that the alteration was beneficial to the insured. It has not proved so in this case. Without the attempted one-sided modification of the contract the beneficiaries concededly would have been entitled to recover.

2. After default in the payment of premiums the defendant regularly sent receipts for payments made out of and charged to the reserve on the policy. It charged 6% on the "loans" and thereby expedited the depletion of the reserve and the expiry of the policy. Conceding most in favor of fair dealing, the parties were under a misapprehension as to the real facts. The premium loan provision never became operative under their contractual arrangement and the rights of each are fixed by the policy.

Morever, it may be questioned whether the so-called premium loan provision is not an effort to evade and circumvent the beneficent provisions of Section 5852, R. S.Mo.1939, Mo.R.S.A. § 5852, relating to the nonforfeiture of insurance policies such as this. It was held invalid in Heuring v. Central States Life Ins. Co., 232 Mo.App. 731, 120 S.W.2d 176, but the Supreme Court in Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S.W.2d 474, 129 A.L.R. 1094, upheld the provision where the assured had in writing specially requested its operation. Even in the Cleaver case the Supreme Court upheld the provisions in favor of liability on the double indemnity provision of the policy. It resolved the doubt, if any, in favor of the policy-holder or the beneficiary.

█ The omnibus clause immediately above the signature of the assured in his "Application for Conversion of Term Policy" did not clothe the defendant with authority to alter the contract in so important a particular. Furthermore the alteration attempted by defendant lacks such clarity as to make it effective for any purpose. If the benefits of the non-forfeiture statute are to be given up by a policyholder it should only be done by a direct affirmative act on his part and not by indirection and vague and meaningless references or by the act of the insurer not affirmatively approved by the insured. The conclusion is almost inescapable that the defendant in

this case quite adroitly endeavored to evade the non-forfeiture statute.

■ Other contentions need not be noticed as the plaintiffs should be allowed recovery in the face amount of the policy less lawful deductions, if any. The conduct of the defendant in thus seeking to nullify its contract without the consent of the insured justifies the application of the punitive statute of Missouri relating to the subject of vexatious delay and refusal to pay. (Mo.R.S.A. § 6040.) The plaintiff should recover as damages the full amount allowed under the law, which is ten per cent. of the recovery.

■ The evidence for the plaintiffs shows that a reasonable attorney's fee would be $1,250. The court is not controlled by this expert advice but should make an allowance in harmony with customary allowances in such cases; $750 would appear to be reasonable under all the circumstances. The plaintiffs ask for interest at 6% from the date of the death of the insured. The defendant was entitled to a reasonable time in which to act upon the demand. The policy provides that payment should be made at its home office upon "due proof of the death" of the assured. A period of thirty days would not be too long a time to give the defendant for its investigations. Interest at 6% should be allowed and computed from a date thirty days after the death, which occurred July 14, 1940. Interest should therefore be computed from August 13, 1940, till date of judgment.

### On Motion for New Trial.

The defendant has complained in its motion for a new trial and its brief in support thereof against the views expressed in the memorandum opinion on the merits of the case.

1. The chief complaint is against the criticism of the automatic premium loan provision of the policy. Such criticism, if any, appertains of course to the attempted application and operation of the provision in this case. As indicated in the main opinion, it is admitted that, without the application of such provision, the policy would have been in force under the law when the assured deceased. By applying the automatic premium loan provision, the statutory provision for extended insurance was not only circumvented, but defeated. It seemed proper, therefore, to discuss the effect upon insurance generally, if automatic premium loan provisions, such as that contained in the policy in suit, became operative.

It is unnecessary, in the decision of this case, to determine the question whether, on the whole, automatic premium loan provisions are advantageous or otherwise to policyholders. Thoughtful consideration of the subject would incline one to believe that it is one not substantially beneficial to policyholders but, as in this case, positively harmful. The argument for its application is specious. The policyholder may be induced to imperil his insurance against a certainty, not as to time, of course, in favor of insurance against limited and quite uncertain contingencies.

2. Counsel for defendant would treat the policy as a counter-proposal to that made by the assured in his application. The policy is not entitled to such consideration. The assured applied for the policy on blanks furnished by the defendant. In his application not even a suggestion was made that he desired to have put in operation the automatic premium loan provision of the contract. After the application, however, had been signed and delivered by him, the defendant caused the insertion of the words "Automatic premium loan provision." These words were meaningless and were inserted at a place where the subject matter and context did not pertain to the automatic premium loan provision. They carry no significance or meaning to any one reading the application. The insertion of the words in the application could not be construed as a written request for the operation of this provision. Moreover, the automatic premium loan provision itself provides the contingency or condition precedent for its application as follows: "If due written request for the operation of this provision has been filed at the Home Office of the Company before default in payment of premium, thereafter until a written revocation of said request has been filed with the company, the amount of any premium not paid before the end of the grace period will automatically be loaned by the Company in payment of such premium and charged as an indebtedness secured by this policy, subject to interest at the rate of six per cent. per annum as prescribed for loans * * *."

3. The procedure contemplated was not that the application for the insurance should contain a request for the application of the provision but, that, after the policy had

been issued, the assured, in case of need, would file a written application for the benefits, if any, of the provision.

 4. The defendant has not within its files a written request of the assured for the application of the premium loan provision. Such a request is a condition precedent to the use of the provision. Notwithstanding this plain, clear and easily understood provision of its policy, the defendant, purporting to issue a policy in exact conformity with the application, imprinted an endorsement on the second page of its policy wherein it recited, contrary to the facts and contrary to the procedure stipulated in its contract, that the assured had requested the operation of the automatic premium loan provision. This endorsement was not related to any other subject matter. Several pages further on in its contract the stipulation for the automatic premium loan provision appeared. The logical and proper place for this endorsement would have been on the same page with the automatic premium loan provision.

5. It may be assumed that the policyholder read his contract and was familiar with the provision which explained how the automatic premium loan provision could be made to operate. He had never signed a request for the use of such provision and there was nothing to challenge his attention to an endorsement that stood aloof and completely isolated from other provisions of the contract and was without heading or other indicia that would challenge his attention to the efforts of the defendant to impose a provision he did not want.

6. If the defendant treated the policy as a counter-proposal, it seems reasonable that in some way the assured ought to have been advised that his application was not accepted and that the company would only issue a policy different from the one applied for. Again, the policy terms did not contemplate such an insertion or endorsement. The automatic premium loan provision was one to be made available to an assured when thrust into such financial distress that it might become necessary for him to seek an indulgence from the defendant.

7. Without a signature of the assured the defendant has attempted to put into force an obligation that had all the indicia of a promissory note drawing interest at six per cent.

8. In effect, the defendant invokes the doctrine of estoppel. There can be no estoppel in a case where the defendant has not changed its position to its disadvantage. In this case, the defendant sought and now claims an advantageous position by secretly attempting to put into effect the automatic premium loan provision. The claimed laches of the assured did not work to the disadvantage of the defendant but obviously to its advantage. It profited by his failure to challenge the conduct of the defendant.

9. Estoppel does not work in favor of one who benefits by the laches of the other party but only in favor of the one who is put at a disadvantage.

Under no theory of law or justice should the defendant in this case be permitted to profit by its wrongdoing. The judgment was for the right party and should remain undisturbed. The motion for a new trial will, accordingly, be overruled. It is so ordered.